IN THE MATTER OF: D.M.

No. COA04-484

(Filed 5 July 2005)

**Termination of Parental Rights— failure to make reasonable progress toward correcting conditions that led to removal—clear, cogent, and convincing evidence**

The trial court did not err by terminating respondent father's parental rights even though respondent contends that the trial court ignored positive evidence regarding his attempts to correct those conditions which led to his child's removal, because there was clear, cogent, and convincing evidence to support the trial court's findings and conclusions that: (1) domestic violence counseling was the focal point of respondent's case plan, respondent's participation in the New Options for Violent Actions Program ·

**IN RE D.M.**

[171 N.C. App. 244 (2005)]

(NOVA) was the key to successfully completing the case plan, and respondent did not complete the NOVA program; and (2) although respondent claims to have sought private counseling, there was no evidence in the record from the counselor regarding the substance of the counseling or treatment and it is unclear from the record that domestic violence was even the central focus of the limited counseling respondent attended.

Judge TYSON dissenting.

Appeal by respondent from order entered 8 October 2003, *nunc pro tunc* 25 September 2003, by Judge Avril U. Sisk in Mecklenburg County District Court. Heard in the Court of Appeals 21 April 2005.

*Mecklenburg County Attorney's Office, by J. Edward Yeager, Jr., for petitioner-appellee Mecklenburg County Department of Social Services.*

*David Childers for respondent-appellant.*

MARTIN, Chief Judge.

Respondent father appeals from an order terminating his parental rights as to his minor son, D.M., born 19 August 1999. For the reasons which follow, we affirm the order of the trial court.

On 11 June 2001, the Mecklenburg County Youth and Family Services, a division of the Mecklenburg County Department of Social Services ("DSS") filed a petition alleging that D.M. was a neglected and dependent juvenile in that he lived in an environment injurious to his health, did not receive proper care or supervision, and did not receive proper medical care. In the petition, DSS alleged that a history of domestic violence existed between respondent and D.M.'s mother, and that both respondent and the child's mother had violated protective orders put in place to protect the mother and her children, including D.M. DSS took custody of D.M. by non-secure custody order and placed him with his maternal grandmother.

On 28 August 2001, *nunc pro tunc* 23 July 2001, D.M. was adjudicated a neglected and dependent juvenile as to his mother. The case was continued as to respondent to allow for paternity testing. On 31 July 2001, respondent entered into a case plan with DSS, in which he agreed to participate in a domestic violence program entitled "New Options for Violent Actions" ("NOVA"), and follow all recommendations in order to "learn about the effects of domestic

violence" on his child and the child's mother. On 7 March 2002, *nunc pro tunc* 28 February 2002, D.M. was adjudicated neglected and dependent as to respondent.

On 25 July 2002, DSS filed a petition to terminate respondent's parental rights. As grounds for termination, the petition alleged: (1) D.M. had been in the custody of DSS for more than six months and respondent had willfully failed to pay a reasonable portion of the cost of child care; and (2) respondent had willfully left D.M. in foster care for more than twelve months without showing to the satisfaction of the court that reasonable progress had been made towards correcting those conditions which led to D.M.'s removal. Accordingly, DSS argued that it was in the best interests of the child that respondent's parental rights be terminated.

On 31 July 2003 and 25 September 2003, hearings were held on the petition to terminate respondent's parental rights, during which DSS offered evidence tending to show the following: Kathy Broome, case management supervisor for the Mecklenburg County NOVA program, testified that respondent had been enrolled in the NOVA program on three separate occasions, but had been terminated from the program each time. According to Ms. Broome, the NOVA program required respondent to "attend [a] group [session] once a week for two hours, take responsibility for his domestic violence behaviors, and not violate any of the program rules." Ms. Broome testified respondent began his most recent enrollment in the program on 9 March 2002, but was sent home during the following session because "he was so angry and defensive and unwilling to listen." During the 23 March 2002 session, respondent was again asked to leave after he brought a tape recorder to the group and attempted to secretly record the session in violation of NOVA rules. Respondent was subsequently terminated from the program. During his enrollment at NOVA, Ms. Broome stated respondent "severely minimized his part in [incidents of domestic violence]." Ms. Broome testified respondent

> refuses to accept any kind of feedback. He is not taking full responsibility for his behaviors. That was the first problem. And then he's not willing to accept any feedback or any ways that he can make changes in his life. He's not interested in making changes from what I can see. He's more interested in finding other people to blame for his situation.

Ms. Broome classified respondent as being "at high risk to re-offend."

**IN RE D.M.**

[171 N.C. App. 244 (2005)]

Respondent testified that following his latest termination from the NOVA program, he sought private counseling with Mr. Larry Shullman. Respondent stated he attended six counseling sessions with Mr. Shullman, during which he discussed "the trouble I was having in our home . . . . the trouble with temper. Try to walk away from people who keep on starting trouble. There was a lot of stuff I talked to him about. You know, about my job situation, you know, other things." Mr. Shullman did not testify.

Belinda McLaughlin, a social worker with DSS, testified she spoke with Mr. Shullman and was only able to verify that respondent attended four counseling sessions with him. Ms. McLaughlin stated this time was insufficient to properly address respondent's issues of domestic violence. Respondent offered no other evidence of his compliance with the DSS case plan.

Following presentation of the evidence, the trial court concluded that respondent had willfully left D.M. in foster care for more than twelve months without showing to the satisfaction of the court that reasonable progress had been made towards correcting those conditions which led to his removal. Accordingly, the trial court concluded that it was in the best interests of the juvenile that respondent's parental rights be terminated. Respondent appeals.

---

Respondent argues the trial court erred by granting the petition to terminate his parental rights because the allegations were not proven by clear, cogent and convincing evidence. Respondent contends the trial court ignored positive evidence regarding his attempts to correct those conditions which led to his child's removal. Respondent cites evidence that he completed parenting classes, sought private counseling, obtained employment, and enjoyed visitation with his son. Respondent concedes that he did not complete classes with NOVA, but contends he was treated unfairly. After careful review of the record, briefs and contentions of the parties, we affirm the order of termination.

Section 7B-1111 of the North Carolina General Statutes sets out the statutory grounds for terminating parental rights. *See* N.C. Gen. Stat. § 7B-1111 (2003). A finding of any one of the separately enumerated grounds is sufficient to support a termination. *In re Taylor*, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "[T]he party petitioning for the termination must show by clear, cogent, and convincing evidence that grounds authorizing the termination of parental rights exist." *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997).

IN RE D.M.

[171 N.C. App. 244 (2005)]

In the case *sub judice*, the trial court concluded that respondent had willfully left D.M. in foster care for more than twelve months without showing to the satisfaction of the court that reasonable progress had been made towards correcting those conditions which led to the child's removal. *See* N.C. Gen. Stat. § 7B-1111(a)(2) (2003). The evidence in the record supports the trial court's findings and conclusion. Respondent had a history of engaging in domestic violence with the child's mother which led to the child's removal. Due to the issue of domestic violence, respondent agreed to complete an assessment with NOVA, to learn about the effects of domestic violence on his child, and follow all recommendations. Domestic violence counseling was the focal point of his case plan, and respondent's participation in NOVA was the key to successfully completing the case plan. Respondent, however, did not complete the NOVA program. Although respondent claims to have sought private counseling with Larry Shullman, there was no evidence in the record from Mr. Shullman regarding the substance of the counseling or treatment. Indeed, it is unclear from the record that domestic violence was even the central focus of the limited counseling respondent attended with Mr. Shullman. Respondent testified he spoke with Mr. Shullman about various topics, including employment issues. Thus, we conclude there was clear, cogent and convincing evidence in the record to support the trial court's findings and conclusion that respondent had failed to make reasonable progress towards correcting the conditions that led to D.M.'s removal. Accordingly, the order terminating respondent's parental rights is affirmed.

Affirmed.

Judge LEVINSON concurs.

Judge TYSON dissents.

TYSON, Judge dissenting.

The majority's opinion affirms the trial court's order to terminate respondent's parental rights for failure to make reasonable progress towards correcting the conditions that resulted in D.M.'s removal. I respectfully dissent.

### I.  Standard of Review

"An order terminating parental rights will be upheld if there is clear, cogent, and convincing evidence to support the findings of fact

and those findings of fact support the trial court's conclusions of law." *In re Clark*, 159 N.C. App. 75, 83, 582 S.E.2d 657, 662 (2003) (citing *In re Oghenekevebe*, 123 N.C. App 434, 439, 473 S.E.2d 393, 398 (1996)). The clear, cogent, and convincing evidence "standard is greater than the preponderance of the evidence standard required in most civil cases, but not as stringent as the requirement of proof beyond a reasonable doubt required in criminal cases." *In re Montgomery*, 311 N.C. 101, 109-10, 316 S.E.2d 246, 252 (1984) (citing *Santosky v. Kramer*, 455 U.S. 745, 745, 71 L. Ed. 2d 599, 599 (1982)). The burden of proof rests on DSS to provide clear, cogent, and convincing evidence to justify termination of respondent's parental rights. *In re Nolen*, 117 N.C. App. 693, 698, 453 S.E.2d 220, 223 (1995) (citations omitted).

## II. Reasonable Progress

The trial court concluded respondent left D.M. in foster care for more than twelve months without showing to the satisfaction of the court reasonable progress had been made to correct the conditions which led to D.M.'s removal.

N.C. Gen. Stat. § 7B-1111(a)(2) (2003) provides grounds for the termination of parental rights, in pertinent part:

> The court may terminate the parental rights upon . . . finding . . . [t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile . . . .

Reasonable efforts can include a "positive response toward improving [a] situation[,]" "the []ability of respondent to care for [his] child," or the "[ability] to show progress in . . . therapy." *In re Oghenekevebe*, 123 N.C. App. at 437, 473 S.E.2d at 396-97.

"To uphold the trial court's order, we must find that the respondent's failure was willful, which is established when the respondent had the ability to show reasonable progress but was unwilling to make the effort." *In re Shermer*, 156 N.C. App. 281, 289, 576 S.E.2d 403, 409 (2003) (citing *In re Fletcher*, 148 N.C. App. 228, 235, 558 S.E.2d 498, 502 (2002)); *see In re Nolen*, 117 N.C. App. 693, 453 S.E.2d 220 (willful failure to make progress where the respondent's alcoholism and abusive living arrangement continued for three and one-half years while the children were in foster care); *In re Bluebird*, 105

N.C. App. 42, 411 S.E.2d 820 (1992) (willful failure to make reasonable progress where the mother left her child in foster care for eighteen months, was unemployed, lived with her abusive boyfriend, and did not attempt to improve her parenting skills).

Respondent's case plan objectives included: (1) complete the NOVA program; (2) attend visits with D.M.; (3) pay child support; and (4) stay away from D.M.'s mother, half-brothers, and half-sister.

### A. NOVA Program

The trial court found as fact respondent did not complete objective one, the NOVA program. The NOVA classes were to assist respondent in dealing with issues of domestic violence. Respondent began the NOVA program on three occasions. On the third attempt, respondent attended two or three sessions before he was terminated from the program because he brought a tape recorder with him. Respondent claims he was treated unfairly during the NOVA classes and brought in the tape recorder to prove his unfair treatment. Respondent claims the case manager insisted he admit to allegations he had perpetrated domestic violence in order to continue his participation in the program. After being excluded from NOVA, respondent sought and received alternative counseling with Larry Shulman ("Shulman") of Charlotte Professional Counseling Center to deal with issues of domestic violence. Shulman stated respondent was open in his discussions about domestic violence, seeing himself as a victim of domestic violence by D.M.'s mother and calling Schulman when he was stressed or when "his back was against the wall." Respondent also attended and completed parenting classes and attended some of the counseling sessions with D.M., D.M.'s mother, and her other children.

The trial court found as fact respondent presented no evidence from Shulman to show the extent of his counseling. However, the record shows respondent signed a release to allow Shulman to discuss his treatment with his case worker. Additionally, the case worker received a report from Shulman regarding respondent and noted this in a reasonable efforts report. The trial court failed to consider or make findings on this evidence in its order.

N.C. Gen. Stat. § 7B-1111(a)(2) requires "reasonable progress" by the parent to correct the conditions which led to removal of the child. Here, respondent substantially complied with the case management order. The trial court ordered respondent to complete NOVA classes to address issues of domestic violence. Respondent did attend these

sessions, but was excluded from participation. When NOVA proved to be an inadequate setting for respondent, he sought alternative treatment for domestic violence with Shulman. Respondent should not be bound by a single source provider to seek to overcome the issues that led to the child's removal. Respondent also sought alternative treatment by attending parenting classes and some counseling sessions. Respondent did not ignore the case management order after leaving the NOVA program, but rather made a conscious and concerted effort to comply by seeking alternative counseling. No clear, cogent, and convincing evidence supports a finding that respondent did not make reasonable progress with his domestic violence counseling. His failure to complete NOVA, standing alone, is not clear, cogent, and convincing evidence to support a contrary finding, where he was required to admit he had perpetrated domestic violence as a condition of continued participation in NOVA.

### B. Visitation

The second objective of the case management order for respondent to attend visitations with D.M. was fully completed. Respondent visited D.M. on a weekly basis during the months of 5 July 2002 through 22 November 2002. Visits temporarily ceased from 6 December 2002 through 25 April 2003 because of problems with D.M.'s mother and her family filing complaints including communicating threats, restraining orders, and assault charges. However, visits were resumed on a biweekly basis once the problems with D.M.'s mother and her family ceased. On 6 June 2003, respondent received approval to visit D.M. once per week. The social worker assigned to D.M.'s case noted in her report, "the visits have been pleasant for everyone."

Another social worker, Ms. Clark-Moser, supervised visits and testified respondent provided food for D.M. on every visit and always hugged, kissed, and buckled D.M. into his seat at the end of every visit. Respondent expressed concern over D.M.'s well being during his visits. Ms. Clark-Moser testified respondent: (1) complained D.M.'s shorts were too large for him on one occasion, requiring a pin to hold them up; (2) expressed concern about D.M.'s clothes being dirty; (3) expressed concern about a hole in D.M.'s shoe; (4) expressed concern about a scar on D.M.'s knee; (5) complained about a hole in D.M.'s sock; (6) went to his car and retrieved an antiseptic to treat a mosquito bite on D.M.'s face; (7) complained D.M.'s clothes were too small; (8) inquired as to why D.M. never wore shoes respondent bought for him; (9) again complained about D.M. wearing

**IN RE D.M.**

[171 N.C. App. 244 (2005)]

old shoes with a hole in them; (10) purchased a new pair of shoes for D.M.; (12) provided a picnic for D.M.; and (13) provided a bed and mattress for D.M.

The trial court noted respondent used his cell phone during a visit and labeled this conduct "inappropriate behavior." However, respondent complied with the case management order, attended visitations regularly, and the social worker observed a warm, affectionate relationship between father and son. Under N.C. Gen. Stat. § 7B-1111(a)(2), DSS failed to prove by clear, cogent, and convincing evidence that respondent failed to make "reasonable progress" during his visits with D.M.

### C. Child Support

Respondent paid child support in order to comply with objective three of the case management order. Respondent was ordered by the court to pay monthly child support payments beginning 1 January 2002. Respondent paid the monthly child support. At the time of the hearing in the Summer 2003, respondent's arrearage was only $88.47. D.M.'s mother's arrearage totaled $1,085.75. The trial court's finding of fact stated, "neither parent has paid child support as ordered by the court." This finding is not supported by any evidence and certainly not by the required standard of clear, cogent, and convincing evidence regarding respondent's failure to pay child support. Respondent made reasonable and substantial progress in providing support for D.M. and complied with objective three of his case management order.

### D. Contact with D.M.'s Mother

The final objective for respondent in the trial court's case management order was to avoid contact with D.M.'s mother and her other children. The court did not find or conclude respondent's non-compliance with this condition as a basis to terminate his parental rights.

### III. Analysis

In order for this Court "[t]o uphold the trial court's order, we must find that the respondent's failure [to make reasonable progress] was willful[.]" *In re Shermer*, 156 N.C. App. at 289, 576 S.E.2d at 409. "The word willful as applied in termination proceedings . . . has been defined as 'disobedience which imports knowledge and a stubborn resistance.'" *In re Pope*, 144 N.C. App. 32, 44, 547 S.E.2d 153, 160 (quotation omitted), *aff'd per curiam* 354 N.C. 359, 554 S.E.2d 644

(2001). " 'Willful' has also been defined as 'doing an act purposely and deliberately.' " *Id.* (citations omitted).

Respondent's conduct does not show he willfully failed to comply with the case management order. Respondent's reasonable efforts are shown by his substantial compliance with all conditions of the order to retain his parental rights.

Respondent's reasonable progress included a positive response towards improving the situation which led to removal of his child, showing his ability to care for D.M., obtaining employment, attending parenting classes, receiving counseling, and paying child support. Respondent did not display "disobedience which imports knowledge and a stubborn resistance." *In re Pope*, 144 N.C. App. at 44, 547 S.E.2d at 160 (quotation omitted). Rather, respondent displayed a willingness to accomplish the tasks necessary to reunite himself and D.M., despite D.M.'s mother and her family's attempts to obstruct and frustrate respondent's efforts.

Respondent made reasonable and substantial efforts to correct the conditions which led to D.M.'s removal. *See In re Nesbitt*, 147 N.C. App. 349, 555 S.E.2d 659 (2001) (The respondent's progress in safety and parenting skills, housing, and employment were evaluated over a twenty-seven month period. Reasonable efforts were found where the respondent attended therapy and coping skills group; selected appropriate television shows and provided toys and physical safety for child; attempted to recognize and improve reactions to child; secured and lived in a new home for almost one year after being evicted, living in a hotel, and living in other temporary arrangements; maintained child support payments; and continued efforts to secure employment although the respondent held approximately seven jobs since the child had been removed.)

Here, respondent sought alternative counseling for his domestic violence issues, attended and completed parenting classes, attended some counseling sessions with D.M., D.M.'s mother, and her other children, attended regular visitations with D.M. at which he displayed affection and concern for D.M.'s well being, and paid child support. NOVA's requirement that respondent admit he was the perpetrator of domestic violence as a condition of his continued participation in the program was unreasonable. Respondent's attempt to tape record his sessions, standing alone, also is not a reasonable basis to terminate his participation in the program. "While we recognize that the trial court is perhaps in the best position to evaluate the evidence in these

very sensitive cases and are mindful of the need for permanency for young children; we believe that the law requires compelling evidence to terminate parental rights." *In re Nesbitt*, 147 N.C. App. at 361, 555 S.E.2d at 667. Here, no clear, cogent, and convincing evidence supports termination of respondent's parental rights for failure to make reasonable progress.

## IV. Conclusion

Respondent submitted to paternity testing to establish his rights as D.M.'s father. Respondent voluntarily entered into a case plan with DSS and participated in multiple hearings to be reunited with his son. The record clearly shows respondent's substantial progress in or completion of all objectives of the case plan. No clear, cogent, and convincing evidence in the record shows respondent did not make reasonable progress in his efforts to correct the conditions that led to D.M.'s removal. I respectfully dissent.