**IN RE D.M.W.**

[173 N.C. App. 679 (2005)]

IN THE MATTER OF: D.M.W., A MINOR CHILD

No. COA05-70

(Filed 18 October 2005)

## 1. Termination of Parental Rights— grounds—neglect

The trial court erred in a termination of parental rights case by concluding that respondent mother neglected the minor child at the time of the hearing, because: (1) respondent completed substance abuse treatment, domestic violence counseling, and parenting classes required by her case plan, although not through DSS's recommended sources, and respondent is not bound by a single source provider for recommended services while seeking to overcome the issues that led to the minor child's removal; and (2) the case plan required respondent to obtain legal employment and stable housing, she obtained employment while in prison working seven days a week in the kitchen while also taking steps to help her obtain employment upon her release such as attempting to obtain her GED, and she testified that she would live with her mother upon her release.

## 2. Termination of Parental Rights— grounds—willfully failed to pay reasonable portion of cost of care for six months preceding filing of petition

The trial court erred in a termination of parental rights case by concluding that respondent mother willfully failed to pay a reasonable portion of the cost of care for a period of six months preceding the filing of the petition although she was physically and financially able to do so, because: (1) respondent testified that she had just got her job with the Department of Correction at the time of the hearing; and (2) no evidence was presented that respondent was employed or had the ability to pay support during the six month period preceding the filing of the petition.

Judge HUNTER dissenting.

Appeal by respondent mother from order entered 26 August 2004 by Judge Avril U. Sisk in Mecklenburg County District Court. Heard in the Court of Appeals 24 August 2005.

*Mecklenburg County Attorney's Office, by J. Edward Yeager, Jr., for petitioner-appellee Mecklenburg County Department of Social Services.*

**IN RE D.M.W.**

[173 N.C. App. 679 (2005)]

*Matt McKay, for petitioner-appellee Guardian ad Litem.*

*Richard Croutharmel, for respondent-appellant.*

TYSON, Judge.

Denise M. ("respondent") appeals from order terminating her parental rights to her minor child, D.M.W. We reverse.

## I. Background

D.M.W. was born to respondent in September 1999. On or about 2 June 2003, respondent left D.M.W. with her maternal grandmother while respondent served time in jail. D.M.W.'s maternal grandmother later left D.M.W. with her aunt, respondent's sister. Respondent did not retrieve D.M.W. on her expected release date.

The Mecklenburg County Department of Social Services ("DSS") became involved in July 2003. Respondent's sister contacted DSS because she could no longer care for D.M.W. DSS searched for respondent, but was unable to locate her. DSS filed a juvenile petition on 9 July 2003 alleging D.M.W. was neglected and dependant. The court ordered non-secure custody of D.M.W. with DSS pending the adjudication hearing.

On 11 August 2003, DSS learned that respondent was incarcerated. DSS and respondent subsequently agreed to a case plan to address the following concerns: (1) substance abuse; (2) domestic violence; (3) parenting skills; (4) housing; and (5) employment. The trial court conducted the adjudication and dispositional hearings on 13 August 2003. Respondent was present with her attorney and stipulated to the facts alleged in the petition. The court adjudicated D.M.W. neglected and dependent as to respondent. The court adopted the 12 August 2003 case plan prepared by DSS.

Respondent was released from jail on or about 22 August 2003 and first met with a DSS social worker on 25 August 2003. On 23 September 2003, the Families in Recovery Stay Together ("FIRST") program screened respondent for substance abuse, mental health, and domestic violence problems. FIRST recommended respondent undergo substance abuse treatment through the CASCADE program and participate in domestic violence counseling through the Women's Commission. Respondent agreed to undergo substance abuse treatment, but refused to participate in domestic violence counseling.

Respondent initiated treatment at the CASCADE program but failed to complete it. She never began the domestic violence counsel-

**IN RE D.M.W.**

[173 N.C. App. 679 (2005)]

ing through the Women's Commission. DSS made a referral for respondent to attend parenting classes. Respondent agreed, but never attended the parenting classes through DSS's recommended source. She was incarcerated at the time of the hearing to terminate her parental rights. Respondent has been incarcerated at least six times during the time in which DSS had custody of D.M.W. and never visited with D.M.W. due to her frequent incarcerations.

Since respondent has been incarcerated, she has worked toward completing the requirements of her case plan. She completed: (1) a substance abuse treatment program; (2) three parenting classes; and (3) a domestic violence treatment program. Respondent expected to be released from prison fourteen days following the hearing to terminate her parental rights.

The court conducted a review hearing of its 13 August 2003 order on 15 January 2004 and ordered reunification efforts with respondent to cease and for DSS to pursue termination of respondent's parental rights. DSS filed a petition to terminate respondent's parental rights on 24 February 2004.

As grounds for termination, the petition alleged respondent: (1) had neglected D.M.W.; and (2) willfully left D.M.W. in the custody of DSS for a continuous period of more than six months preceding the filing of the petition without paying a reasonable portion of the cost of care for D.M.W. although physically and financially able to do so. DSS alleged it was in the best interest of D.M.W. that respondent's parental rights be terminated. On 25 August 2004, the trial court entered an order finding facts to terminate respondent's parental rights on both grounds and concluded it was in D.M.W.'s best interest to terminate respondent's parental rights. Respondent appeals.

## II. Issues

The issues on appeal are whether the trial court erred by: (1) concluding that grounds existed to terminate respondent's parental rights based on neglect; (2) concluding that grounds existed to terminate respondent's parental rights based on willfully leaving D.M.W. in foster care for more than six continuous months without paying a reasonable portion of D.M.W.'s cost of care; (3) concluding that it was in D.M.W.'s best interest to terminate respondent's parental rights; and (4) abusing its discretion and violating respondent's substantial rights by terminating her parental rights.

### III.  Standard of Review

A termination of parental rights proceeding involves two separate analytical phases: an adjudication stage and a dispositional stage. *In re Blackburn*, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). A different standard of review applies to each phase.

"At the adjudication stage, the party petitioning for the termination must show by clear, cogent, and convincing evidence that grounds authorizing the termination of parental rights exist." *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997). The standard for appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether those findings of fact support its conclusions of law. *In re Huff*, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), *disc. rev. denied*, 353 N.C. 374, 547 S.E.2d 9 (2001) (citation omitted). "Clear, cogent, and convincing describes an evidentiary standard stricter than a preponderance of the evidence, but less stringent than proof beyond a reasonable doubt." *N.C. State Bar v. Sheffield*, 73 N.C. App. 349, 354, 326 S.E.2d 320, 323 (1985).

If the petitioner meets its burden of proving at least one ground for termination of parental rights exists under N.C. Gen. Stat. § 7B-1111(a), then the trial court proceeds to the dispositional phase and determines whether termination of parental rights is in the best interest of the child. N.C. Gen. Stat. § 7B-1110(a) (2003). We review the trial court's "best interests" decision under an abuse of discretion standard. *In re Nesbitt*, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001).

### IV.  Conclusions of Law

#### A.  Neglect

[1] N.C. Gen. Stat. § 7B-1111(a) (2003) provides nine separate enumerated grounds upon which a court may terminate parental rights. A finding of any one of those grounds will authorize a court to terminate parental rights. *In re Pierce*, 67 N.C. App. 257, 261, 312 S.E.2d 900, 903 (1984). Respondent argues that DSS presented insufficient evidence to support the trial court's findings of fact to support its conclusion that grounds existed to terminate her parental rights based on neglect. We agree.

A trial court may terminate parental rights upon a finding that "the parent has abused or neglected the juvenile." N.C. Gen. Stat. § 7B-1111(a)(1) (2003). A neglected juvenile is defined as follows:

A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare.

N.C. Gen. Stat. § 7B-101(15) (2003).

It is well established that "[a] finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." *In re Young*, 346 N.C. at 248, 485 S.E.2d at 615 (citation omitted). If the child is removed from the parent before the termination hearing, as in this case, then "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." *In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984). "[P]arental rights may nonetheless be terminated if there is a showing of a past adjudication of neglect and the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile were returned to [his] parents." *In re Reyes*, 136 N.C. App. 812, 815, 526 S.E.2d 499, 501 (2000).

DSS did not present sufficient evidence at the time of the termination hearing to serve as a basis to terminate respondent's parental rights. DSS argued respondent failed to complete portions of her case plan. Pursuant to the case plan, respondent was to complete a substance abuse assessment with the FIRST program, follow all recommendations made by the FIRST program, and refrain from using any substances. With regard to the domestic violence concerns under the case plan, respondent was to complete an assessment for domestic violence counseling through the FIRST program and follow all recommendations. The case plan also required respondent to complete parenting classes through the Family Center and follow all recommendations made by professionals. Respondent was also to obtain and maintain employment sufficient to provide for D.M.W. and stable housing.

Respondent completed substance abuse treatment, domestic violence counseling, and parenting classes required by her case plan, although not through DSS's recommended sources. She completed a substance abuse and domestic violence assessment through the FIRST program on 23 September 2003. FIRST recommended substance abuse treatment through the CASCADE program and

IN RE D.M.W.

[173 N.C. App. 679 (2005)]

domestic violence counseling through the Women's Commission. Respondent never began domestic violence counseling through the Women's Commission. However, while in custody of the Mecklenburg County Sheriff, she completed a two week domestic violence class. Respondent also began a week long parenting class while in the custody of the Mecklenburg County Sheriff, but was only able to finish three classes because she was transferred to the Department of Correction. Respondent began substance abuse treatment through the CASCADE program, attended approximately six sessions, but was unable to complete the program because she was subsequently incarcerated. While in custody of the Department of Correction, she completed intensive chemical dependency treatment through a two month Drug Awareness Resistance Treatment Program ("DART").

Respondent did not complete substance abuse treatment, domestic violence counseling, and parenting classes recommended by DSS, but sought and completed alternative treatment and counseling programs. Respondent is not bound by a single source provider for recommended services while seeking to overcome the issues that led to D.M.W.'s removal.

The case plan also required respondent to obtain legal employment and stable housing. She obtained employment while in prison working seven days a week in the kitchen. There was no evidence presented at the hearing concerning the wage respondent earned while working in prison. Respondent also completed a cognitive behavior intervention program and completed some of the required courses to obtain her GED. At the time of the termination hearing, respondent anticipated completing her GED prior to release from custody of the Department of Correction. Respondent has taken steps while incarcerated to help her obtain employment upon her release. No finding of fact shows respondent did not have stable housing. Respondent testified that she will live with her mother upon her release.

The 12 August 2003 case plan addresses five areas of concern: (1) substance abuse; (2) domestic violence; (3) parenting skills; (4) employment; and (5) housing. Upon our review of the evidence presented at the termination hearing, we find that DSS did not meet its statutory burden of proving by clear, cogent, and convincing evidence that respondent, at the time of the termination hearing, had not taken substantial steps and made reasonable progress to resolve these issues. The trial court erred in concluding as a matter of law that

respondent neglected D.M.W. *See In re Young*, 346 N.C. at 248, 485 S.E.2d at 615.

### B.  Failure to Pay a Reasonable Portion of the Cost of Care

**[2]**  Respondent next argues that the trial court erred in concluding as a matter of law that D.M.W. has been placed in the custody of DSS for a continuous period of more than six months preceding the filing of the petition and respondent willfully failed to pay a reasonable portion of the cost of care for D.M.W. although physically and financially able to do so pursuant to N.C. Gen. Stat. § 7B-1111(a)(3). We agree.

"[C]ost of care refers to the amount it costs the Department of Social Services to care for the child, namely, foster care. Specific findings of fact as to the reasonable needs of the child are not required." *In re Montgomery*, 311 N.C. 101, 113, 316 S.E.2d 246, 254 (1984) (quotation omitted).

> A parent's ability to pay is the controlling characteristic of what is a reasonable portion of cost of foster care for the child which the parent must pay. A parent is required to pay that portion of the cost of foster care for the child that is fair, just and equitable based upon the parent's ability or means to pay. What is within a parent's ability to pay or what is within the means of a parent to pay is a difficult standard which requires great flexibility in its application.

*In re Clark*, 303 N.C. 592, 604, 281 S.E.2d 47, 55 (1981) (quotation omitted). "[N]onpayment constitutes a failure to pay a reasonable portion 'if and only if respondent [is] able to pay some amount greater than zero.' " *In re Clark*, 151 N.C. App. 286, 289, 565 S.E.2d 245, 247 (2002) (quoting *In re Bradley*, 57 N.C. App. 475, 479, 291 S.E.2d 800, 802 (1982)).

The trial court found respondent has paid nothing toward the cost of caring for D.M.W. despite having employment with the Department of Correction while in prison. At the termination hearing, respondent testified that she had "just got" the job with the Department of Correction. No evidence was presented that respondent was employed or had the ability to pay support during the six month period preceding the filing of the petition. The trial court made no findings regarding respondent's ability or means to pay. *In re Clark*, 151 N.C. App. at 289, 565 S.E.2d at 247. Without such findings to support the conclusions of law, the trial court erred in terminating respondent's parental rights on this ground.

IN RE D.M.W.

[173 N.C. App. 679 (2005)]

## IV. Conclusion

DSS failed to provide clear, cogent, and convincing evidence to support the trial court's conclusion that respondent neglected D.M.W. at the time of the hearing and willfully failed to pay a reasonable portion of the cost of care for a period of six months preceding the filing of the petition although she was physically and financially able to do so. In light of our decision, we do not address respondent's remaining assignments of error. The trial court's order is reversed.

Reversed.

Judge STEELMAN concurs.

Judge HUNTER dissents.

HUNTER, Judge, dissenting.

Because I conclude there was clear, cogent, and convincing evidence in the record to support the trial court's termination of respondent's parental rights, I respectfully dissent from the majority.

Respondent's case plan with DSS indicated respondent had an extensive substance abuse history, including various criminal drug charges, and limited parenting skills. Respondent was also a victim of domestic violence and had not provided a stable living environment for her family. The case plan contained the following objectives: (1) Successful treatment for respondent's substance abuse issues; (2) appropriate treatment for respondent's domestic violence issues; (3) effective demonstration by respondent of appropriate parenting skills; and (4) maintenance of a stable, appropriate home. To meet these objectives, respondent agreed to (1) complete a substance abuse assessment through FIRST, follow all recommendations, submit to random drug screens, and refrain from drug use; (2) complete a domestic violence assessment through FIRST and follow any recommended counseling; (3) successfully complete a parenting skills class through the Family Center and follow all recommendations; and (4) obtain and maintain appropriate employment and appropriate and stable housing, with all household bills to be paid monthly.

Ms. Hoop-Lightner, a social worker, testified respondent failed to complete her substance abuse treatment with the CASCADE program and had not provided proof of completing any other type of substance abuse treatment program. Respondent did not comply with

domestic violence counseling, nor did she provide proof to DSS of alternate treatment. Respondent did not attend parenting classes at the Family Center, and she did not inform DSS of any other parenting classes she attended. Respondent failed to maintain contact with DSS, although Ms. Hoop-Lightner provided respondent with her contact information. Between periods of incarceration, respondent failed to visit her child. At the time of the hearing, respondent was incarcerated, and had no plans for employment upon release and no housing other than her mother's residence. DSS originally became involved with the family after respondent's mother left the minor child with his maternal aunt while respondent was incarcerated.

The trial court concluded that respondent had neglected her child and that termination of respondent's parental rights was in the best interests of the child. The trial court's findings and conclusions are fully supported by clear and convincing evidence. The evidence showed respondent failed to successfully fulfill even one of the requirements of her case plan with DSS. The majority nevertheless asserts that "[r]espondent completed the substance abuse treatment, domestic violence counseling, and parenting classes required by her case plan, although not through DSS's recommended sources." This assertion is unsupported by the evidence of record.

Respondent testified she attended only three parenting classes while in the custody of the Mecklenburg County Sheriff. Ms. Hooper-Lightner testified respondent never attended parenting classes at the Family Center, as required by her case plan, and that respondent failed to inform DSS of her involvement with the three parenting classes she attended while incarcerated. DSS therefore had no opportunity to assess whether respondent's attendance of the three parenting classes had enabled her to develop appropriate parenting skills, which was the ultimate objective of the case plan. Respondent submitted no evidence regarding the parenting program she attended. *See In re D.M.*, 171 N.C. App. 244, 248, 615 S.E.2d 669, 671 (2005) (holding that clear, cogent, and convincing evidence existed to support termination of the respondent-father's parental rights, where the respondent-father failed to complete domestic violence counseling with NOVA as required by his case plan with DSS, and there was no evidence in the record regarding the substance of the alternative private treatment the respondent-father received). As such, the majority's assertion that respondent completed the parenting classes required by her case plan is unsupported by the record.

Next, respondent testified she completed a two-week domestic violence class while in the custody of the Mecklenburg County Sheriff. According to respondent, the classes met "every other day." Thus, respondent attended, at most, seven classes. Ms. Hooper-Lightner testified respondent never provided her with any proof she was engaged in any type of domestic violence treatment. Again, respondent failed to offer any evidence regarding the substance of these classes or their effectiveness towards resolution of her domestic violence issues. *See id.* The majority's conclusion that respondent completed the domestic violence counseling required by her case plan is therefore unsupported by the record.

Finally, respondent testified she completed the DART substance abuse treatment program while incarcerated. Respondent offered no evidence that the DART program was substantially similar to the CASCADE program required by her case plan. Respondent testified that, upon her release from incarceration, she had no employment and no independent housing. Contrary to the majority's assertion, the trial court specifically found that respondent "never provided proof of having obtained appropriate housing or legal employment."

The majority states that "[r]espondent is not bound by a single source provider for recommended services while seeking to overcome the issues that led to D.M.W.'s removal." Respondent is surely responsible, however, for informing DSS of her alternate compliance with the case plan to which she agreed, or for providing the trial court with evidence regarding the substance of the treatment she received. Without information regarding the length and type of treatment respondent received, the trial court and DSS had no ability to assess whether, in fact, respondent substantially complied with her case plan, and, more importantly, whether she met the ultimate objectives the case plan was designed to achieve. The case plan was designed to ensure that respondent could provide proper care and supervision of her son and to avoid the probability of future neglect. To that end, respondent needed to successfully treat her substance abuse and domestic violence issues, demonstrate appropriate parenting skills, and maintain a stable, appropriate home. Respondent provided little evidence that she has achieved any of these objectives. As found by the trial court, respondent's completion of some treatment classes while incarcerated "does not demonstrate a long-term commitment to resolution of the issues which led to placement of the child into foster care." Notably, the evidence tended to show, and the trial court found, that what little progress respondent made

towards achieving the objectives articulated in her case plan occurred while she was incarcerated. While respondent was not incarcerated, she "made absolutely no progress toward resolution of any of the issues on her case plan. During those times she also failed to maintain contact with [DSS] or to visit with the child." There was, therefore, little evidence of changed conditions on the part of respondent, and clear and convincing evidence of the probability of future neglect by respondent.

Because I conclude the trial court properly found grounds for terminating respondent's parental rights under N.C. Gen. Stat. § 7B-1111(a)(1), I need not address the remaining ground found by the court. *See In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 132-33 (1982). I further conclude the trial court did not err in determining that termination of respondent's parental rights was in the best interests of the child, and did not abuse its discretion in terminating respondent's parental rights. DSS presented evidence that respondent's son was thriving in foster care, that he had bonded with his foster family and referred to his foster mother as "Mom," and that the family was interested in adopting him. The trial court did not err in terminating respondent's parental rights. I therefore respectfully dissent.