McCULLOUGH, Judge.
Respondent-mother appeals from an order terminating her parental rights to her minor children K.S.B. and J.U.F.B. (collectively, "the children"). We affirm.
I. Background
Wake County Human Services ("WCHS") has responded to multiple reports regarding this family beginning in 2008 and has provided the family with in-home services since September 2013. On 9 June 2014, WCHS received a report that respondent-mother had a seizure while driving with the children after failing to take her medication. WCHS instituted a safety plan, but respondent-mother did not comply with it. On 17 July 2014, the family moved in with respondent-mother's sister, P.W.
In August 2014, respondent-mother submitted to a cognitive evaluation by Dr. Robert Aiello. Based upon this evaluation, Dr. Aiello diagnosed respondent-mother with "Intellectual Disability-Mild." As a result, respondent-mother was referred to the "Families on the Grow" program.
On 13 October 2014, P.W. contacted DSS because J.U.F.B. was sick and medical professionals would not treat her without respondent-mother's consent. Respondent-mother was contacted and stated she would come in two hours, but she failed to do so. On 14 October 2014, WCHS filed a petition alleging that the children were neglected juveniles and obtained nonsecure custody of the children.
The petition was heard on 18 November 2014. Respondent-mother stipulated to a number of facts which supported an adjudication of neglect. On 9 December 2014, the trial court entered an order adjudicating the children as neglected and continuing their placement with WCHS. Respondent-mother was ordered to, inter alia , comply with her visitation plan, follow through on the recommendations of her cognitive evaluation, demonstrate the ability to manage her income independently, obtain and maintain suitable housing, apply for Medicaid, engage in vocational rehabilitation services, complete an anger management assessment and comply with any recommendations, maintain regular contact with WCHS, and provide WCHS with the names of any individuals with whom she was dating or residing.
Although respondent-mother initially made progress with respect to her case plan, her efforts were not consistent. During visitations, she was unable to demonstrate the parenting skills that had been taught to her. Respondent-mother was unable to secure safe and stable housing, missed several mental health appointments, and did not engage in vocational rehabilitation services. On 14 September 2015, the trial court entered an order ceasing reunification efforts and changing the permanent plan for the children to adoption.
On 10 November 2015, WCHS filed a motion to terminate respondent-mother's parental rights on the grounds of neglect, failure to make reasonable progress, and failure to pay a reasonable portion of the children's care. See N.C. Gen. Stat. § 7B-1111(a)(1) - (3) (2015). The motion was heard on 29 February and 29-30 March 2016. Prior to the hearing, respondent-mother moved for the appointment of a guardian ad litem ("GAL") to represent her at the hearing. After conducting a colloquy with respondent-mother, the trial court concluded that she was competent and denied her motion.
On 6 June 2016, the trial court entered an order terminating respondent-mother's parental rights based on all three grounds alleged in the motion. The court also concluded that termination was in the children's best interest. Respondent-mother filed timely notice of appeal.[1]
II. Guardian Ad Litem
Respondent-mother argues that the trial court erred by denying her motion for the appointment of a GAL. She contends that the court improperly ignored evidence that she was unable to manage her affairs or make important decisions. We disagree.
N.C. Gen. Stat. § 7B-1101.1(c) (2015) provides that in a juvenile proceeding "[o]n motion of any party or on the court's own motion, the court may appoint a guardian ad litem for a parent who is incompetent in accordance with G.S. 1A-1, Rule 17." An "[i]ncompetent adult" is defined as one "who lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property whether the lack of capacity is due to mental illness, mental retardation, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury, or similar cause or condition." N.C. Gen. Stat. § 35A-1101(7) (2015).
"A trial judge has a duty to properly inquire into the competency of a litigant in a civil trial or proceeding when circumstances are brought to the judge's attention [that] raise a substantial question as to whether the litigant is non compos mentis. " In re J.A.A. & S.A.A. , 175 N.C. App. 66, 72, 623 S.E.2d 45, 49 (2005). "A trial court's decision concerning whether to appoint a parental guardian ad litem based on the parent's incompetence is reviewed on appeal for abuse of discretion." In re T.L.H. , 368 N.C. 101, 107, 772 S.E.2d 451, 455 (2015). "An [a]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." Id. (internal quotation marks and citation omitted).
In this case, the trial court made the following findings of fact to support its conclusion that respondent-mother did not require a GAL:
1. The mother receives social security disability at approximately $657 per month. No representative payee has been appointed on her behalf.
2. The mother manages her own finances and day-to-day affairs. She can read and write and graduated from high school. She was never held back in school.
3. No health care or general power of attorney has been appointed for the mother.
4. The mother is capable of getting her own prescriptions and maintaining full time employment. She is capable of making her own decisions regarding her food, hygiene, medical care, housing, personal safety and other daily needs. She is able to converse with the Court and appropriately answer questions.
5. The mother suffers from cognitive delays. The Court takes judicial notice of the cognitive assessment completed in the underlying abuse/neglect/dependency file and the recommendations offered by Dr. Aiello.
6. Although the mother does not appear to understand the consequences of missing the children's medical appointments and is generally unorganized, she does understand that the children were removed from her care due to concerns regarding her ability to parent.
7. There is not a reasonable basis to believe that the mother is incompetent or has diminished capacity and cannot adequately act in her best interests.
These findings were based upon a lengthy colloquy between respondent-mother and the court prior to the termination hearing. Respondent-mother challenges findings of fact 2, 4, 6, and 7. She argues that the trial court's reliance on respondent-mother's answers during this colloquy was misplaced because "her answers did not comport with reality or are irrelevant to the reality." Respondent-mother asserts that all of the other evidence, including respondent-mother's cognitive evaluation and the testimony of her social worker, demonstrate that she was incompetent such that the trial court abused its discretion by denying her counsel's motion to appoint a GAL.
Our Supreme Court has explained that
evaluation of an individual's competence involves much more than an examination of the manner in which the individual in question has been diagnosed by mental health professionals. Although the nature and extent of such diagnoses is exceedingly important to the proper resolution of a competency determination, the same can also be said of the information that members of the trial judiciary glean from the manner in which the individual behaves in the courtroom, the lucidity with which the litigant is able to express himself or herself, the extent to which the litigant's behavior and comments shed light upon his or her understanding of the situation in which he or she is involved, the extent to which the litigant is able to assist his or her counsel or address other important issues, and numerous other factors. A great deal of the information that is relevant to a competency determination is simply not available from a study of the record developed in the trial court and presented for appellate review.
In re T.L.H. , 368 N.C. at 108, 772 S.E.2d at 456. In this case, the trial court questioned respondent-mother extensively about a wide range of topics, including her education and reading comprehension level, her ability to provide adequate nutrition, hygiene, and health care for herself and her children, her ability to respond to threats to her personal safety, her current living situation, her employment search, and her ability to manage her finances. The trial court was able to witness respondent-mother's answers to its questions, which were generally appropriate, and make its determination based upon this first-hand interaction. Respondent-mother's testimony was consistent with the court's findings, and these findings supported its conclusion that respondent-mother "has sufficient capacity to manage her own affairs and to communicate important decisions regarding her person, family and property." We discern no abuse of discretion in the trial court's denial of a GAL for respondent-mother. This argument is overruled.
III. Grounds for Termination
Respondent-mother argues that the trial court erred by concluding that grounds existed to terminate her parental rights. We disagree.
"The standard for review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." In re Clark , 72 N.C. App. 118, 124, 323 S.E.2d 754, 758 (1984). "If unchallenged on appeal, findings of fact are deemed supported by competent evidence and are binding upon this Court." In re A.R.H.B. , 186 N.C. App. 211, 214, 651 S.E.2d 247, 251 (2007) (internal quotation marks and citations omitted).
Under N.C. Gen Stat. § 7B-1111(a)(1), "[t]he trial court may terminate the parental rights to a child upon a finding that the parent has neglected the child." In re Humphrey , 156 N.C. App. 533, 540, 577 S.E.2d 421, 427 (2003). A neglected juvenile is defined, in relevant part, as "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned [.]" N.C. Gen. Stat. § 7B-101(15) (2015).
"A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." In re Young , 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997). However, when, as here, the children have been removed from their parent's custody such that it would be impossible to show that the children are currently being neglected by their parent, "a prior adjudication of neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights on the ground of neglect." In re Ballard , 311 N.C. 708, 713-14, 319 S.E.2d 227, 231 (1984). If a prior adjudication of neglect is considered, "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." Id. at 715, 319 S.E.2d at 232. Thus, where
there is no evidence of neglect at the time of the termination proceeding ... parental rights may nonetheless be terminated if there is a showing of a past adjudication of neglect and the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile were returned to [his or] her parents.
In re Reyes , 136 N.C. App. 812, 815, 526 S.E.2d 499, 501 (2000). A parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect. In re D.M.W. , 173 N.C. App. 679, 688-89, 619 S.E.2d 910, 917 (2005) (Hunter, J., dissenting), rev'd for reasons stated in dissenting opinion , 360 N.C. 583, 635 S.E.2d 50 (2006).
In this case, the trial court's unchallenged findings of fact reflect that respondent-mother (1) made minimal progress on her case plan, (2) did not effectively manage her finances, (3) did not have verified, stable housing, (4) did not effectively engage with her children during visitation, (5) did not complete vocational rehabilitation, and (6) refused to acknowledge the severity of her seizure disorder and as a result, did not treat it effectively. These findings fully support the trial court's conclusion that respondent-mother's parental rights were subject to termination based upon neglect. This argument is overruled.
Since we have concluded termination on this ground was proper, we need not address respondent-mother's arguments regarding the remaining grounds found by the trial court. See In re S.C.H. , 199 N.C. App. 658, 661, 682 S.E.2d 469, 471 (2009) (A finding of any one of the statutorily enumerated grounds for termination of parental rights is sufficient to support termination.), aff'd per curiam , 363 N.C. 828, 689 S.E.2d 858 (2010).
IV. Conclusion
The trial court's findings of fact, which were supported by its direct interaction with respondent-mother, were sufficient to support its determination that respondent-mother did not require a GAL. The court's unchallenged findings support its conclusion that respondent-mother's parental rights were subject to termination on the ground of neglect. The trial court's termination order is affirmed.
AFFIRMED.
Report per Rule 30(e).
Chief Judge McGEE and Judge STROUD concur.

The order also terminated the parental rights of the children's father, but he did not appeal.