ZACHARY, Judge.
Respondent, the biological mother of P.L.R. ("Philip"),[1] appeals from an order terminating her parental rights. After careful review, we affirm the decision of the trial court.
I. Background
On 8 December 2015, the Buncombe County Department of Social Services ("DSS") filed a petition alleging that Philip was an abused, neglected, and dependent juvenile. On 7 April 2016, the trial court adjudicated Philip as abused, neglected, and dependent. The trial court based its adjudication on Respondent-Mother's "untreated mental health issues, substance abuse, domestic violence, and failure to abide by safety plans. Further, the minor child tested positive for marijuana, cocaine, amphetamines, and methamphetamine." As a result, "[a] case plan was created for the parents to engage in services to correct the conditions that led to the involvement of [DSS]," and the trial court ordered Respondent-Mother to complete those services.
Respondent-Mother completed a clinical assessment, which recommended that she complete an intensive substance abuse program. The case plan required that Respondent-Mother complete Helpmate, a program addressing domestic violence. Respondent-Mother participated in Helpmate twice, but she failed to complete the program. Respondent-Mother also took part in Buncombe County's SOAR Court program to address issues related to substance abuse; however, she failed to successfully complete that program. Moreover, Respondent-Mother was incarcerated multiple times while Philip was in the custody of DSS, which hampered her ability to visit Philip. At the time of the hearing to terminate Respondent-Mother's parental rights, Philip remained in placement with foster parents, with whom he was well bonded, and his permanent plan was adoption.
On 26 May 2017, DSS filed a petition to terminate Respondent-Mother's parental rights. Then, in January of 2018, Respondent-Mother failed to submit to drug screens requested by DSS. The matter came on for hearing before the Honorable Andrea F. Dray in Buncombe County District Court on 3 November 2017 and 7 February 2018. By order entered 8 March 2018, the trial court concluded that it was in Philip's best interests to terminate the parental rights of both Respondent-Mother and Philip's biological father. Respondent-Mother timely filed notice of appeal on 5 April 2018.
II. Discussion
Respondent-Mother argues on appeal that the trial court erred by concluding that grounds existed to terminate her parental rights, and that the trial court failed to make the necessary findings of fact that it was in Philip's best interest to terminate Respondent-Mother's parental rights. We disagree.
The standard of review in a termination of parental rights case is well established. "A proceeding to terminate parental rights is a two step process with an adjudicatory stage and a dispositional stage." In re C.C. , 173 N.C. App. 375, 380, 618 S.E.2d 813, 817 (2005). "In the adjudicatory stage, the burden is on the petitioner to prove by clear, cogent, and convincing evidence that one of the grounds for termination of parental rights set forth in N.C. Gen. Stat. § 7B-1111(a) exists." Id. On appeal, this Court reviews "whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether those findings of fact support its conclusions of law." Id. "Clear, cogent, and convincing describes an evidentiary standard stricter than a preponderance of the evidence, but less stringent than proof beyond a reasonable doubt." Id. If the petitioner establishes that at least one statutory ground exists to warrant termination of parental rights, "the court proceeds to the dispositional phase and determines whether termination of parental rights is in the best interests of the child." Id. Upon appeal of a dispositional order, the standard of review is abuse of discretion, id. at 380-81, 618 S.E.2d at 817, that is, whether the trial court's "actions are manifestly unsupported by reason." In re A.W. , 237 N.C. App. 209, 212, 765 S.E.2d 111, 113 (2014) (quotation marks omitted). "Unchallenged findings are deemed to be supported by sufficient evidence and are binding on appeal." In re H.D. , 239 N.C. App. 318, 326, 768 S.E.2d 860, 865 (2015) (quotation marks omitted). We review the trial court's conclusions of law de novo . In re J.S.L. , 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006).
A. Grounds for Termination of Parental Rights
In the instant case, the trial court concluded that grounds existed to terminate Respondent-Mother's parental rights based on her neglect of Philip. A neglected juvenile is
[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or the custody of whom has been unlawfully transferred ...; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15) (2017).
Generally, "[i]n deciding whether a child is neglected for purposes of terminating parental rights, the dispositive question is the fitness of the parent to care for the child at the time of the termination proceeding." In re L.O.K. , 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (quotation marks omitted). When, however, "a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible." Id . (quotation marks omitted). "In those circumstances, a trial court may find that grounds for termination exist upon a showing of a history of neglect by the parent and the probability of a repetition of neglect." Id. (quotation marks omitted).
1. Challenges to Findings of Fact 23, 24, 25, 27, and 35
On appeal, Respondent-Mother challenges the following of the trial court's findings, in the adjudicatory portion of the order, concerning the probability of a repetition of neglect:
23. Respondent[-M]other has failed to comply with the recommendations of her ACTT team, related to mental health.
24. Respondent[-M]other does not have appropriate housing. During the time the minor child has been in foster care, [R]espondent[-M]other has been discharged twice from halfway houses.
25. Respondent[-M]other is currently residing in the maternal grandmother's home. Respondent[-M]other's brother, who has substance abuse issues, also resides in the home. The maternal grandmother's home is not safe and has not been approved by [DSS] for placement of the minor child.
....
27. Respondent[-M]other has relapsed on controlled substances while the minor child has been in foster care.
....
35. Respondent[-M]other has failed to complete court ordered services.
Respondent-Mother first argues that "Finding 23 is erroneous as it appears to be unsupported by competent evidence." However, Respondent-Mother cites no authority for this argument, nor does she offer any evidence to dispute this finding. We deem this argument waived as her bare assertion of error, without any citation to any record evidence or legal authority, is not properly before this Court. See In re C.D.A.W. , 175 N.C. App. 680, 688, 625 S.E.2d 139, 144 (2006) (holding an issue on appeal was abandoned where it was "void of any discernible argument or citation as authority for such a claim"), aff'd per curiam , 361 N.C. 232, 641 S.E.2d 301 (2007).
Respondent-Mother also contends that "Findings 24 and 25 are erroneous." These findings concern the appropriateness of Respondent-Mother's housing. The only evidence that Respondent-Mother offered to contest these findings was that she now had "a roommate, but she also has kids, too" and that nothing inappropriate was established about the roommate's residence. However, Respondent-Mother gave that testimony at the dispositional phase of the hearing, after the trial court had already determined that grounds existed to terminate Respondent-Mother's parental rights. Regardless, there was clear, cogent, and convincing evidence to support the trial court's findings regarding Respondent-Mother's housing. Denise Miller, the program coordinator for the Buncombe County Family Treatment Court, testified that Respondent-Mother was kicked out of two halfway houses. Social Worker Lorraine Aubin testified that DSS did not consider the maternal grandmother's home to be appropriate housing because Respondent-Mother had "made several remarks about the grandmother, her mother, drinking, and ... that her brother is living there and he is actively using, which is a concern for her."
In addition, Respondent-Mother asserts that finding of fact 27, which states that Respondent-Mother "has relapsed on controlled substances while the minor child has been in foster care," is "erroneous in that it is misleading." Respondent-Mother concedes in her brief to this Court that the finding is true, but that "there was no competent evidence to show [Respondent-Mother] was not living a sober life as of the termination hearing." Again, Respondent-Mother cites no authority or record evidence to support her argument. See id. (holding an issue on appeal was abandoned where appellant made no "discernible argument or citation" in support of the claim). Respondent-Mother waives this claim of error.
Respondent-Mother then argues that finding of fact 35, which states that she has "failed to complete court ordered services," is "partially erroneous." Again, Respondent-Mother concedes the truth of this finding in her brief, explaining that she "did fail to complete some court ordered services, but she also completed many other court ordered services." Ms. Miller testified that Respondent-Mother did not successfully complete the SOAR substance abuse program. Ms. Aubin testified that although Respondent-Mother was assigned to participate in Helpmate and parenting classes, she completed neither program. Therefore, this finding was supported by clear, cogent, and convincing evidence.
2. Challenge to Conclusion of the Existence of Neglect
Respondent-Mother contends that "the competent evidence and proper findings do not support a conclusion that the ground of neglect ... existed as of the termination hearing." We disagree.
This Court faced similar facts in In re D.M.W. , 173 N.C. App. 679, 619 S.E.2d 910 (2005) (Hunter, J., dissenting), rev'd for reasons stated in dissent , 360 N.C. 583, 635 S.E.2d 50 (2006). In D.M.W. , the respondent-mother had limited parenting skills and a history of substance abuse, criminal charges, and domestic violence. Id. at 686, 619 S.E.2d at 916. The respondent-mother's case plan included substance abuse treatment, domestic violence counseling, parenting skills classes, and maintenance of a stable and appropriate home. Id. The respondent-mother agreed to complete the required assessments and classes as directed; however, a social worker testified that the respondent-mother failed to complete her substance abuse treatment, domestic violence counseling, and parenting classes. Id. at 686-87, 619 S.E.2d at 916. Judge Hunter noted in his dissent that "evidence [that the] respondent failed to successfully fulfill even one of the requirements of her case plan with DSS" supported the trial court's conclusion "that respondent had neglected her child and that termination of [the] respondent's parental rights was in the best interests of the child." Id. at 687, 619 S.E.2d at 916.
Here, the trial court was presented with clear, cogent, and convincing evidence that Respondent-Mother lacked stable and appropriate housing, as the maternal grandmother's residence was not safe for a minor child. Respondent-Mother failed to complete the assigned substance abuse programs and she continued to test positive for drug use. Respondent-Mother also failed to complete other court-ordered programs designed to improve her parenting skills and prevent domestic violence. Just as in D.M.W. , Respondent-Mother's failure to complete court-ordered services and her failed drug tests demonstrated a high probability of future neglect. Accordingly, clear, cogent, and convincing evidence supported the trial court's findings of fact, and those findings supported the trial court's conclusion that Respondent-Mother neglected Philip.
3. Other Grounds for Termination of Parental Rights
Respondent-Mother additionally argues that the trial court erred by concluding that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) to terminate her parental rights. However, a conclusion that any of the grounds in section 7B-1111 exists is sufficient to support termination. In re Taylor , 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). Thus, because we have determined that clear, cogent, and convincing evidence was presented to support the trial court's conclusion of neglect, we need not address whether the remaining grounds found by the trial court support termination of Respondent-Mother's parental rights. Id. at 69, 387 S.E.2d at 234.
B. Determination of Philip's Best Interests
Finally, Respondent-Mother argues that the trial court erred in terminating her parental rights when the trial court failed to make certain necessary findings of fact regarding the child's best interest, pursuant to N.C. Gen. Stat. § 7B-1110(a). We disagree.
After determination that at least one ground exists for terminating parental rights,
the court shall determine whether terminating the parent's rights is in the juvenile's best interest. The court may consider any evidence, including hearsay evidence ..., that the court finds to be relevant, reliable, and necessary to determine the best interests of the juvenile. In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a).
The trial court is not required "to make written findings with respect to all six factors; rather, as the plain language of the statute indicates, the court must enter written findings in its order concerning only those factors that are relevant." In re D.H. , 232 N.C. App. 217, 221, 753 S.E.2d 732, 735 (2014) (quotation marks omitted). "[A] factor is relevant if there is conflicting evidence concerning the factor, such that it is placed in issue by virtue of the evidence presented before the trial court." H.D. , 239 N.C. App. at 327, 768 S.E.2d at 866 (quotation marks omitted). A finding is not required if the factor does not have "an impact on the trial court's decision." D.H. , 232 N.C. App. at 221, 753 S.E.2d at 735.
Respondent-Mother specifically argues that "the trial court made no finding at all as to key circumstances pertaining to the adoptive parents' purported desires and plans to allow a continued relationship between Philip and [Respondent-Mother] should an adoption occur." In the trial court's order terminating Respondent-Mother's parental rights, the trial court made findings addressing the first five factors. The trial court addressed "[t]he quality of the relationship between the juvenile and the proposed adoptive parent," N.C. Gen. Stat. § 7B-1110(a)(5), finding that Philip "is bonded with the foster parents and calls them 'momma' and 'mommy[.]' [Philip] is also bonded to the other children in the home of the foster parents." Ms. Aubin testified that she has observed Philip and his foster parents monthly since January 2016 and that they are "very bonded, very loving, caring on each side." When asked whether she "ever had any concerns about [Philip] being safe in [the foster parents'] home," Ms. Aubin testified, "Never." Ms. Aubin stated that the foster parents are "willing to adopt [Philip]."
No conflicting evidence was presented to the trial court concerning the relationship between Philip and the proposed adoptive parents. Respondent-Mother takes issue with the fact that no one made her aware of the proposed adoptive parents' desire to set up a post office box "to allow the exchange of letters and pictures with [Philip's adoptive and biological parents], if they adopt [Philip]." However, nothing about this argument places "[t]he quality of the relationship between the juvenile and the proposed adoptive parent" at issue. N.C. Gen. Stat. § 7B-1110(a)(5). Accordingly, because the trial court made findings of fact as to all relevant issues concerning the best interests of the child, the trial court did not abuse its discretion in terminating Respondent-Mother's parental rights.
III. Conclusion
The trial court found adequate grounds to terminate Respondent-Mother's parental rights and that it was in Philip's best interest to do so. Accordingly, the trial court did not abuse its discretion in terminating Respondent-Mother's parental rights. As a result, the trial court's order terminating Respondent-Mother's parental rights is affirmed.
AFFIRMED.
Report per Rule 30(e).
Judges BERGER and HAMPSON concur.

A pseudonym is used throughout the opinion to protect the identity of the juvenile and for ease of reading.