IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-1230

Filed: 1 August 2017

Mecklenburg County, Nos. 13 JA 423–25

IN THE MATTER OF: C.M.P., C.Q.M.P., J.A.C.

Appeal by respondent-mother from order entered 7 September 2016 by Judge

David H. Strickland in Mecklenburg County District Court. Heard in the Court of

Appeals 11 July 2017.

> *Senior Associate Attorney Keith S. Smith, for petitioner-appellee Mecklenburg County Department of Social Services, Youth and Family Services.*
>
> *Administrative Office of the Courts, by GAL Appellate Counsel Matthew D. Wunsche, for guardian ad litem.*
>
> *J. Thomas Diepenbrock for respondent-appellant mother.*

BRYANT, Judge.

Where the trial court did not err in denying respondent's motion for a

continuance or in concluding grounds existed to terminate respondent's parental

rights, we affirm.

Respondent is the mother of C.M.P. ("Charlene"), C.Q.M.P. ("Charles"), and

J.A.C. ("Jackson"),[1] and Mr. P. is the father of Charlene and Charles. Respondent

and Mr. P have a history with the Mecklenburg County Department of Social

---

[1] Pseudonyms are used to protect the juveniles' privacy and for ease of reading. N.C. R. App. P. 3.1(b) (2017).

Services, Youth and Family Services ("YFS") dating back to 2011 due to issues of domestic violence and inappropriate discipline. YFS most recently became involved with the family on 13 March 2013, when it received a referral alleging that a domestic violence incident occurred between respondent and Mr. P., wherein respondent's C-section stitches were torn during the incident. Mr. P. was charged with assault on a female. After the incident, respondent and the children briefly stayed with the maternal grandmother before moving into the paternal grandmother's home with Mr. P. and Mr. P.'s seventeen-year-old sister.

On 17 June 2013, YFS received a referral alleging suspected sexual abuse of then three-month-old Charlene. A medical examination revealed that the child's genital and rectal area had been subjected to trauma and that her hymen was not intact, but the source of the injuries could not be determined. At the time of the injury, two male cousins aged thirteen and fourteen years old were visiting at the home and had unsupervised contact with Charlene. However, no one on the paternal side of the family believed the cousins could have been the source of the injuries.

Respondent entered into a safety plan in which she agreed to return to the home of the maternal grandmother and also agreed there would be constant "eye/sight" supervision of the children at all times by the maternal grandmother. Because there was also a history of domestic violence between the maternal grandmother and respondent, they also agreed not to engage in any violence in the

presence of the children. YFS transferred the case to family intervention on 8 July 2013.

On 15 July 2013, YFS received a referral alleging that a domestic violence incident had occurred between respondent and the maternal grandmother wherein respondent assaulted the maternal grandmother by pushing her hand in the grandmother's face. YFS also received information that respondent threw a rock through the grandmother's storm door shattering the glass. The children were present during both incidents. Respondent was cited for damage to property and violating a domestic violence protective order ("DVPO") the maternal grandmother had taken out against respondent based on a "history of assaultive behavior" beginning in 2008. The maternal grandmother stated that she was overwhelmed by taking care of the children and that she could only provide care through 16 July 2013.

On 17 July 2013, YFS filed a juvenile petition alleging that the children were abused, neglected, and dependent, and took the children into nonsecure custody. The children were placed with a maternal cousin on 31 July 2013 and have remained in that placement for the duration of the case.

A hearing was held on the juvenile petition on 18 September 2013. Respondent stipulated to the allegations in the petition, and the trial court entered an order

adjudicating the children neglected and dependent as to respondent.[2] The trial court ordered respondent to comply with her case plan which required her to participate in a parenting course and demonstrate the skills learned, obtain and maintain adequate employment, obtain and maintain safe and stable housing, and complete a domestic violence assessment at NOVA, a domestic violence education and services provider, and follow all recommendations.

Respondent initially engaged in her case plan by completing a parenting class, completing an assessment with NOVA, and obtaining employment. However, on 28 September 2014, respondent and Mr. P. engaged in a domestic violence incident resulting in their arrests. Respondent lost her job due to her arrest, and she was allowed only supervised visitation with the children.

A permanency planning review hearing was held on 2 December 2014, and the trial court found that respondent was incarcerated due to charges of armed robbery and conspiracy to commit armed robbery. She had been arrested on 29 November 2014 and was still incarcerated at the time of the 2 December 2014 hearing. The court suspended her visitation while she was incarcerated.

Another permanency planning review hearing was held on 12 May 2015, and the trial court found that respondent had not visited with the children since

---

[2] Mr. P. had not been served at the time of the hearing and the trial court held adjudication as to him in abeyance. Charlene and Charles were adjudicated neglected and dependent as to Mr. P. on 2 December 2013.

December 2014, despite the fact that suspension of visitation had been lifted upon her release from jail.[3] The trial court also found that respondent was living with the maternal grandmother, and was employed. The court further found that respondent "ha[d] not yet shown that she can parent her children" and "was advised that she [would] need to have perfect compliance during [the] upcoming review period." Respondent was awarded two hours of supervised visitation a week but was ordered to complete two clean drug tests before she could exercise her visitation. The trial court continued the permanent plan (first imposed on 30 December 2013) as reunification with respondent.

On 15 April 2015, respondent was arrested again for injury to real property and injury to personal property. On 15 July 2015, respondent tested positive for cocaine. A subsequent drug screen on 22 July 2015 came back positive for cocaine and alcohol. Respondent denied using cocaine. Respondent also had an unauthorized, unsupervised four-day visit with the children in July 2015. She reentered substance abuse treatment, but had other subsequent drug screens which were positive for cocaine on 10 and 17 September 2015. She subsequently completed the substance abuse program in March 2016.

---

[3] The record indicates that respondent was able to have one supervised visit with the children on Christmas Day at the maternal grandmother's home upon her release from jail, but as of the week before the hearing on 12 May 2015, the children had no other visits with respondent after December 2014.

In March 2016, respondent and Mr. P. engaged in another domestic violence incident, after which they both were charged with assault and respondent obtained a DVPO against Mr. P. On 24 June 2016, YFS filed a petition to terminate respondent's parental rights on the grounds of neglect, failure to make reasonable progress, failure to pay reasonable cost of care, and dependency. *See* N.C. Gen. Stat. § 7B-1111(a)(1), (2), (3), (6) (2015).

After a seventh permanency planning review hearing held 22 July 2016, the trial court found that respondent had been discharged from NOVA due to excessive absences, had another new job, had a pending hit and run charge, and had been arrested for assault after the March 2016 domestic violence incident with Mr. P.

The hearing on the petition to terminate respondent's parental rights was held on 25 August 2016. At the start of the hearing, respondent's counsel moved to continue because respondent was not present and counsel had "expected her to be [t]here." The trial court denied the motion and went forward with the hearing. A social worker testified that respondent had not made sufficient progress on her case plan to show she would be able to successfully and appropriately parent her children in that she did not have stable housing, had not completed the NOVA domestic violence program, and her employment had been inconsistent over time. The social worker also testified that respondent was inconsistent with her visits with the children and had not seen them in the month prior to the hearing despite being

allowed to have weekly visitation. The social worker further testified respondent had a history of making progress on her case plan but then regressing. The trial court entered an order on 7 September 2016 terminating respondent's parental rights to all three children on the grounds of neglect, failure to make reasonable progress, and dependency. Respondent appeals.

---

On appeal, respondent contends the trial court erred by (I) summarily denying respondent's motion to continue, and (II) concluding grounds existed for terminating respondent's parental rights.

*I*

Respondent first argues the trial court erred in summarily denying her motion to continue based on her unexplained absence at the termination hearing. Respondent contends the court's decision deprived her of her right to effective assistance of counsel. We disagree.

The standard for granting a motion to continue is set out in N.C. Gen. Stat. § 7B-803, which provides in relevant part as follows:

> The court may, for good cause, continue the hearing for as long as is reasonably required to receive additional evidence, reports, or assessments that the court has requested, or other information needed in the best interests of the juvenile and to allow for a reasonable time for the parties to conduct expeditious discovery. Otherwise, continuances shall be granted only in extraordinary circumstances when necessary for the proper

administration of justice or in the best interests of the juvenile.

N.C. Gen. Stat. § 7B-803 (2015).

"A trial court's decision regarding a motion to continue is discretionary and will not be disturbed on appeal absent a showing of abuse of discretion. Continuances are generally disfavored, and the burden of demonstrating sufficient grounds for continuation is placed upon the party seeking the continuation." *In re J.B.*, 172 N.C. App. 1, 10, 616 S.E.2d 264, 270 (2005) (citations omitted). "However, if 'a motion to continue is based on a constitutional right, then the motion presents a question of law which is fully reviewable on appeal.'" *In re D.Q.W.*, 167 N.C. App. 38, 40–41, 604 S.E.2d 675, 677 (2004) (quoting *State v. Jones*, 342 N.C. 523, 530–31, 467 S.E.2d 12, 17 (1996)).

Respondent argues that the trial court's denial of her motion to continue implicates her due process right to effective assistance of counsel, including the right of a client and counsel to have adequate time to prepare a defense, and thus the issue presents a question of law which is fully reviewable on appeal. Respondent, however, presents this constitutional argument for the first time on appeal.

To determine whether a failure to grant a continuance implicates constitutional rights, the reasons presented for the requested continuance are of particular importance. *Id.* at 42, 604 S.E.2d at 677. In the instant case, respondent's counsel raised only one ground to support the motion to continue at the hearing: that

respondent was absent from the hearing. As previously noted, respondent raises for the first time on appeal the issues of effective assistance of counsel and adequate time to prepare a defense. "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1) (2017). Therefore, respondent failed to preserve the issue of whether the denial of the motion violated her constitutional right to effective assistance of counsel.

Further, this Court has held that a parent's due process rights are not violated when parental rights are terminated at a hearing at which the parent is not present. *See In re Murphy*, 105 N.C. App. 651, 658, 414 S.E.2d 396, 400 (1992). Thus, respondent's motion to continue was not based on a constitutional right, and we review the trial court's denial of the motion for abuse of discretion. *See In re D.W.*, 202 N.C. App. 624, 627, 693 S.E.2d 357, 359 (2010) (reviewing the denial of the absent respondent mother's motion to continue based on her right to be present at the hearing for abuse of discretion).

After denying respondent's motion to continue, the trial court conducted a full hearing on the petition, heard testimony from several witnesses, and respondent's counsel was given full opportunity to cross-examine each witness. Indeed, respondent's counsel fully participated in the hearing by frequently objecting to

testimony she deemed inadmissible, cross-examining witnesses, and presenting a closing argument on respondent's behalf. A court reporter also prepared a stenographic transcript of the hearing.

"When . . . a parent is absent from a termination proceeding and the trial court preserves the adversarial nature of the proceeding by allowing the parent's counsel to cross examine witnesses, with the questions and answers being recorded, the parent must demonstrate some actual prejudice in order to prevail on appeal." *Murphy*, 105 N.C. App. at 658, 414 S.E.2d at 400 (citing *In re Barkley*, 61 N.C. App. 267, 270, 300 S.E.2d 713, 715–16 (1983)). Respondent argues she was prejudiced by the denial of the motion because her presence at the hearing was essential for her attorney to present an adequate defense, and that she was not able to testify regarding her case plan progress and rebut evidence presented by YFS.

Here, respondent was served with a summons and a copy of the petition on 4 July 2016 and does not argue that she lacked notice of the hearing. Respondent's attorney informed the court that she had spoken with respondent by telephone a few days prior to the hearing and that counsel expected her to be in court that day. Counsel had been representing respondent in this matter for three years, throughout the entirety of the case starting in 2013, and at no time did she make the argument that she needed additional time to prepare for the hearing. Thus, "[w]e see no possibility that respondent was unfairly surprised or that her ability to contest the

petition to terminate was prejudiced." *In re Mitchell*, 148 N.C. App. 483, 487, 559 S.E.2d 237, 240 (citations omitted), *rev'd on other grounds*, 356 N.C. 288, 570 S.E.2d 212 (2002). Further, the record does not disclose any attempt by respondent to contact the court or her counsel to inform them of any issue preventing her attendance at the hearing, and she has not provided any reason for her absence. "Courts cannot permit parties to disregard the prompt administration of judicial matters. To hold otherwise would let parties determine for themselves when they wish to resolve judicial matters." *Id.* at 488, 559 S.E.2d at 241. Therefore, we hold the trial court did not abuse its discretion in denying respondent's motion for a continuance.

## II

Respondent next argues the trial court erred in concluding that grounds existed to terminate her parental rights. Specifically, respondent contends the trial court erred when it concluded respondent neglected the juveniles, willfully left the juveniles in a placement outside the home, and is incapable of proper care and supervision of the juveniles. We disagree.

"The standard of review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." *In re Shepard*, 162 N.C. App. 215, 221–22, 591 S.E.2d 1, 6 (2004) (quoting *In re Clark*, 72 N.C. App. 118, 124, 323

S.E.2d 754, 758 (1984)). "If the trial court's findings of fact 'are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary.' " *In re S.C.R.*, 198 N.C. App. 525, 531, 679 S.E.2d 905, 909 (2009) (quoting *In re Williamson*, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988)). Unchallenged findings of fact "are conclusive on appeal and binding on this Court." *Id.* at 532, 679 S.E.2d at 909 (citation omitted). We review the trial court's conclusions of law *de novo*. *In re S.N.*, 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008).

Pursuant to N.C. Gen Stat. § 7B-1111(a)(1), "[t]he trial court may terminate the parental rights to a child upon a finding that the parent has neglected the child." *In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 427 (2003) (citing N.C.G.S. § 7B-1111(a)(1)). A neglected juvenile is defined, in relevant part, as "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; . . . or who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101(15) (2015).

"A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." *In re Young*, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997) (citation omitted). However, when, as here, the children have been removed from their parent's custody such that it would be impossible to show that the children are currently being neglected by their parent,

"a prior adjudication of neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights on the ground of neglect." *In re Ballard*, 311 N.C. 708, 713–14, 319 S.E.2d 227, 231 (1984). If a prior adjudication of neglect is considered, "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." *Id.* at 715, 319 S.E.2d at 232 (citation omitted). Thus, where

> there is no evidence of neglect at the time of the
> termination proceeding . . . parental rights may
> nonetheless be terminated if there is a showing of a past
> adjudication of neglect and the trial court finds by clear and
> convincing evidence a probability of repetition of neglect if
> the juvenile were returned to [his or] her parents.

*In re Reyes*, 136 N.C. App. 812, 815, 526 S.E.2d 499, 501 (2000) (citing *Ballard*, 311 N.C. at 716, 319 S.E.2d at 232).

> That a parent provides love and affection to a child does
> not prevent a finding of neglect. Neglect exists where the
> parent has failed in the past to meet the child's physical
> and economic needs and it appears that the parent will not,
> or cannot, correct those inadequate conditions within a
> reasonable time.

*In re J.H.K.*, 215 N.C. App. 364, 369, 715 S.E.2d 563, 567 (2011) (citations omitted). A parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect. *See In re D.M.W.*, 173 N.C. App. 679, 688–89, 619 S.E.2d 910, 917 (2005) (Hunter, J., dissenting) ("[R]espondent needed to successfully treat her substance abuse and domestic violence issues, demonstrate appropriate

parenting skills, and maintain a stable, appropriate home. Respondent provided little evidence that she has achieved any of these objectives."), *rev'd for reasons stated in dissenting opinion*, 360 N.C. 583, 635 S.E.2d 50 (2006).

Here, the trial court made the following relevant findings of fact.

> 6. The issues which caused DSS/YFS to remove these three juveniles included, among other things, [respondent's] and [Mr. P.'s] domestic violence history; unstable housing and employment as well as the parents' inappropriate supervision of the juveniles. The family's CPS[4] history was also significant. Specifically, there were three prior referrals with this family. First, on January 18, 2011, it was alleged that while [respondent] was living with the maternal grandmother, some of the children appeared to have unexplained bruising. Second, on May 9, 2012, it was alleged that [respondent] and children had unstable housing, there was domestic violence between [respondent] and [Mr. P.], and the parenting/supervision of the children was inappropriate. Third, on March 13, 2013, there was additional domestic violence between [respondent] and [Mr. P.] where [respondent] was holding [Charles] at the time who was also reportedly injured.
>
> 7. The Court conducted an adjudicatory hearing on September 18, 2013, but the adjudication for [Mr. P.] was held in abeyance until December 2, 2013 because he had not been served with the underlying juvenile petition and summons as of the September hearing. The juveniles were all eventually adjudicated neglected and dependent. Respondent mother was present at both the September and December hearings. [Mr. P.] was present during the December hearing only.
>
> . . . .

---

[4] *See infra* note 5.

9.   As part of her case plan, the respondent mother was required to complete parenting education, obtain and maintain safe and stable housing and employment, and complete domestic violence education (through NOVA). The expectation with the completion of the classes was that the lessons would be internalized such that there would be a behavioral change, and that the completion of classes was not just a "checklist."

. . . .

12. There was a domestic violence incident on September 28, 2014 which resulted in both respondent mother and [Mr. P.] being arrested.

13. As of the first Permanency Planning Review (PPR) Hearing on December 2, 2014, [respondent] was incarcerated due to charges of armed robbery and conspiracy to commit armed robbery. As of this hearing, [respondent] was working at Time Warner Cable arena (arena), living with the maternal grandmother and, as noted above, had completed her parenting classes. . . .

14. As of the second PPR Hearing on March 24, 2015, [respondent] was attending NOVA classes and was employed but no longer at the arena. [Respondent] had identified a possible residence, but it needed some repair work before she or the juveniles could live there. [Respondent] was also addressing her substance abuse problems with Anuvia and with FIRST Level 2 drug court. . . .

15. As of the third PPR Hearing on May 12, 2015, [respondent] was working at a new job (at Saddle Creek Cleaning), she was looking for new housing, she was inconsistently attending NOVA and weekly therapy, and had been unsuccessfully discharged from Anuvia. The Court noted during this hearing that [respondent] has not demonstrated an ability to parent her children and would need to show perfect compliance during the upcoming

review period. . . .

16. As of the fourth PPR Hearing on August 25, 2015, [respondent] had provided multiple positive drug screens and had started a new drug treatment program (SACOT—substance abuse comprehensive outpatient treatment), she had a new job at a hotel and at Bank of America stadium, she had still not completed NOVA and had a four-day unauthorized, unsupervised visit with the juveniles. . . .

17. As of the seventh PPR Hearing on July 22, 2016, [respondent] had been clean and sober for several months (including the completion of an in-patient substance abuse program in early 2016 and the submission of multiple clean drug screens), she had a new job at Mercy Hospital, but had been discharged from NOVA due to excessive absences. She has never completed a domestic violence program. [Respondent] was struggling to pay the NOVA fees, but [she] had been employed for some time and was living with maternal grandmother. [Respondent] also has a pending Hit and Run charge and has been arrested twice recently for assault. The alleged victim is [Mr. P.] [Mr. P.] was arrested in June 2016 for assault as well. The respondent mother is the alleged victim of his assault charge. . . .

. . . .

22. The Court's frustration with [respondent] is that she clearly loves her children. The children also love her. However, [respondent] is inconsistent with her attendance at visitation. Additionally, because of her lack of case plan progress, she has never been able to put herself in a position to consistently have unsupervised visitation. Indeed, [respondent] (three years into this case) still only has two hours of weekly supervised visitation. When visits do occur between [respondent] and the juveniles, they generally go well—she brings snacks, games and other activities and sometimes clothing. Regarding her attendance at visitation, between Christmas 2014 and mid-March 2015, [respondent] did not visit with the children.

> Moreover, earlier in 2016, [respondent] attended five consecutive visits all of which went well, had visits on June 2 and 23, 2016 and one visit in July, but between that July 2016 visit and this hearing [on 25 August 2016], she missed four consecutive visits. Additionally, [respondent's] housing remains unstable. She was ineligible for the Family Unification Program (a government-supported housing assistance program) because of her criminal background. While [respondent] has consistently had employment throughout the history of this case, she has failed to maintain employment at one location for an extended period of time. She repeatedly loses her job and has to obtain new employment. [Respondent's] absence from this TPR hearing, despite actual notice, is also noteworthy. *It is apt to say that she will take one step forward followed by two steps back*. [Respondent] has still not demonstrated an ability to care for her children due to issues of domestic violence, housing, and stability.

(Emphasis added).

Respondent challenges Findings of Fact Nos. 6 and 22 as not being supported by clear and convincing evidence. First, respondent challenges the portion of Finding of Fact No. 6 which states that "[t]he issues which caused DSS/YFS to remove these three juveniles included, among other things, [respondent's] and [Mr. P.'s] domestic violence history; unstable housing and employment as well as the parents' inappropriate supervision of the juveniles." Respondent contends that this finding is "misleading" because although there had been domestic violence incidents between respondent and Mr. P., it was other events occurring after that time which led to YFS filing the petition, including suspected sexual abuse of Charlene, incidents of domestic violence between respondent and her mother, and the maternal

grandmother's inability to care for the children after 16 July 2013. Respondent contends that neither YFS's petition, nor the adjudication portion of the adjudication and disposition order, identified housing or employment as reasons leading to the removal of the children from their parents' care.

Contrary to respondent's assertion, domestic violence between respondent and Mr. P. was a factor for YFS becoming involved in the case and for the removal of the children from respondent's care. The juvenile petition included an allegation that YFS received a referral alleging domestic violence between respondent and Mr. P., that respondent was treated at the hospital, and that Mr. P. was charged with assault on a female. The petition also included respondent's history with Child Protective Services ("CPS")[5] due to issues of inappropriate discipline and domestic violence with Mr. P. Respondent stipulated to these findings in the initial adjudication order.

Additionally, the trial court specifically found in the adjudication and disposition order that the "problems which led to the adjudication and must be resolved to achieve reunification and/or otherwise conclude this case . . . include but are not necessarily limited to housing and employment stability." Finally, at the hearing, the social worker testified regarding respondent's CPS history and that the issues that needed to be addressed were domestic violence and unstable housing and employment. This is clear and convincing evidence to support Finding of Fact No. 6.

---

[5] CPS is a division of the Mecklenburg County Department of Social Services ("DSS") separate from YFS.

Respondent also challenges the portion of Finding of Fact No. 22 which states that her housing remains unstable. Respondent contends that she is living with the maternal grandmother and there are no findings that this arrangement was unstable. However, in a prior YFS report, incorporated by reference into the 30 December 2013 review order, YFS stated that respondent "does not have stable housing and is residing with her mother." Respondent was also not allowed to have unsupervised visits at the maternal grandmother's home due to their history of domestic violence. At the termination hearing, the social worker testified that respondent had not secured her own housing throughout the case and continued to reside with the maternal grandmother. Indeed, the social worker testified that respondent "doesn't have stable housing." This is clear and convincing evidence that respondent had not obtained stable housing and supports Finding of Fact No. 22.

Finally, respondent challenges the portion of the trial court's Conclusion of Law No. 6 that "[t]here is a high probability of the repetition of neglect and all respondent parents have acted inconsistently with their protected constitutional rights." Respondent contends this conclusion is inconsistent with the trial court's findings throughout the underlying case, and it is not supported by the findings in the termination of parental rights order.

The trial court's findings support the conclusion that there is a high probability of the repetition of neglect if the children are returned to respondent's care. We first

note that the trial court found in Finding of Fact No. 24 that "[d]ue to . . . [respondent's] ongoing struggles . . . all three juveniles remain in foster care and there is a high probability of the repetition of neglect." Respondent does not specifically challenge this finding and it is therefore binding on appeal. *See S.C.R.*, 198 N.C. App. at 531, 679 S.E.2d at 909.

The children were removed from the parents' care due to issues of domestic violence, unstable housing and employment, and improper supervision. During the three years the children have been in custody, respondent never addressed the domestic violence issues by completing an assessment at NOVA. Indeed, shortly before YFS filed the petition to terminate her parental rights, respondent was involved in another domestic violence incident with Mr. P. and was arrested on assault charges related to that incident.

Although respondent was employed during a majority of the time the children were in custody, her employment was unstable as she failed to maintain employment at any one job for an extended period of time. The findings show that respondent had at least six different jobs during the three year period, and had a history of losing her job and obtaining new employment. Respondent also continued to live with her mother, the maternal grandmother, and never obtained independent housing. Thus, the trial court's findings show that respondent had not addressed the issues which led to the children being adjudicated neglected, and those findings support the court's

conclusion that there is a high probability of repetition of neglect if the children are returned to respondent's care.

Respondent also challenges the portion of the trial court's Conclusion of Law No. 6 stating that the parents acted inconsistently with their constitutionally protected rights. However, this conclusion is not necessary to terminate parental rights based on neglect. *See* N.C.G.S. § 7B-1111(a)(1); N.C.G.S. § 7B-101(15). Having determined that the trial court's termination of respondent's parental rights based on neglect is fully supported by the record, we need not review additional grounds for termination. *See Humphrey*, 156 N.C. App. at 540, 577 S.E.2d at 426 ("A finding of any one of the enumerated grounds for termination of parental rights under N.C.G.S. 7B-1111 is sufficient to support a termination." (citation omitted)). Accordingly, the order of the trial court is

AFFIRMED.

Judges HUNTER, JR. concurs.

Judge MURPHY concurs in a separate opinion.

No. COA16-1230 – *In re C.M.P., C.Q.M.P., J.A.C.*

MURPHY, Judge, concurring.

The Majority found no error in the trial court's conclusion that it had a ground to terminate Respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1) (2015). I concur. I write separately to emphasize that I concur *only* because Finding of Fact 24 was unchallenged by Respondent and, thus, is binding on our Court. *See In re S.C.R.*, 198 N.C. App. 525, 532, 679 S.E.2d 905, 909 (2009) (explaining that unchallenged findings of fact are binding on appeal).