IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-398

No. COA21-6

Filed 3 August 2021

Durham County, Nos. 11 J 286; 11 J 287

IN RE: A.D. & A.D.

Appeal by Respondent from order entered 31 August 2020 by Judge Shamieka

L. Rhinehart in Durham County District Court. Heard in the Court of Appeals 8

June 2021.

> *Durham County Government, by Senior Assistant County Attorney Bettyna Belly Abney, for Durham County Department of Social Services, Petitioner-Appellee.*
>
> *Erica M. Hicks, for the Guardian ad Litem.*
>
> *Edward Eldred, for Respondent.*

WOOD, Judge.

¶ 1         Respondent appeals an order adjudicating the minor children, Alta[1] and

Ardith, neglected. On appeal, Respondent alleges the trial court erred because its

finding of fact that the Durham County Department of Social Services ("DSS")

substantiated neglect was not supported by clear and convincing evidence.

---

[1] *See* N.C. R. App. P. 42(b) (pseudonyms are used to protect the identity of the juveniles).

Respondent further contends the trial court erred in concluding Alta and Ardith were neglected because this conclusion of law was not supported by its findings of fact. After careful review of the record and applicable law, we affirm the decision of the trial court.

## I.  Background

In 2012, Respondent was granted custody of Alta, Ardith, and their brother.[2] The children came into Respondent's care because their biological mother, Respondent's sister, struggled with substance abuse.  On September 8, 2018, DSS received a report regarding the family, alleging neglect due to improper discipline. Specifically, the report alleged Respondent smacked Alta in the face, resulting in a nosebleed.  Respondent admitted she swung at Alta, but claimed she only intended to hit her on the shoulder.  Ardith also reported that she was "whooped with a belt" on the back of her legs, resulting in bruising.

In December 2018, DSS closed its investigation, marking the case as "Services Needed" rather than "Substantiated" on its case decision summary.  On December 7, 2018, DSS determined services were needed for the family and transferred the case to an in-home services case worker for ongoing case management.  At that time, DSS recommended counseling services for Respondent, Alta, and Ardith, and

---

[2] Alta and Ardith's brother is not subject to this appeal.

recommended that Respondent participate in parenting classes.

¶ 4   On January 17, 2019, DSS attempted to provide an In-Home Services Agreement (the "Agreement") to Respondent and explain the process for completing the requirements, but Respondent refused to sign the Agreement. The social worker made multiple subsequent visits to Respondent's home, and Respondent continued to refuse to sign the Agreement. The social worker testified that Respondent was angry with the results of DSS's investigation and felt it was unfair.

¶ 5   That same month, Respondent, Alta, and Ardith each completed a comprehensive clinical assessment through Yelverton Enrichment Services ("Yelverton"). According to Ardith's comprehensive clinical assessment, she was distressed over the separation from her biological mother. Ardith was sad, angry, desired to be left alone, and suffered from nightmares. She also displayed troublesome behavior, such as hitting and calling children names at school and hitting and screaming at others two to three times a week at school and once a week at home. According to Alta's comprehensive clinical assessment, Alta expressed that she felt abandoned by her biological mom, experienced sadness, desired to be alone, and had flashbacks of living with her mother. She felt helpless and hopeless because she constantly thought about the past, causing her to be distracted by worry and memories. Alta reported that sometimes she forced herself to eat when she did not feel like eating.

¶ 6 During Respondent's comprehensive clinical assessment, Respondent reported feeling stressed and overwhelmed due to the attention Alta and Ardith required and because she internalized the grief over the passing of her grandmother. The social worker reported Respondent had various emotional outbursts while working with DSS. According to the social worker, Respondent experienced crying spells during their meetings, was verbally aggressive, and yelled at the social worker and her supervisor.

¶ 7 The results of the comprehensive clinical assessments led to Alta and Ardith being diagnosed with adjustment disorder with mixed anxiety and depressed mood. Respondent was diagnosed with major depressive disorder, moderate, single episode, with anxious disorder. Yelverton recommended Respondent, Alta, and Ardith participate in outpatient therapy to address their issues and develop skills to manage their symptoms.

¶ 8 Despite the recommendations she received from Yelverton and DSS, Respondent refused to schedule therapy appointments for herself, Alta, or Ardith. On January 18, 2019, Alta began receiving therapy in her charter school from a Yelverton therapist. Alta met with the Yelverton therapist once a week through the end of the school year in June 2019 but did not receive any further mental health treatment thereafter.

¶ 9 Yelverton was not able to provide services to Ardith because she attended a

public school. Respondent was uncomfortable having the therapist meet Ardith in her home and did not allow the therapist to provide services to Ardith in the residence. Yelverton was unable to schedule appointments on the weekend when Respondent reported she had availability, so Ardith was not able to participate in services.

¶ 10          Respondent attended one therapy session in June 2019 but failed to attend the second scheduled appointment and did not reschedule. The therapist attempted to set up in-home sessions, but Respondent refused to allow the therapist into her home. DSS offered to assist Respondent with transportation to therapy sessions, but Respondent refused. Respondent refused to participate in parenting classes, intensive in-home services, peer support, home and school visits, case management services, and attempted social worker counseling and guidance as recommended by DSS. Respondent prevented the social worker from seeing the children, only allowing access three times during the first four months of in-home services, and once allowing the social worker to see the children through the door.

¶ 11          On July 5, 2019, DSS filed a petition alleging Alta, Ardith, and their younger brother were dependent and neglected juveniles. DSS filed the petition "[d]ue to [Respondent]'s resistance to engage herself or the children in any services." At the time of the filing of the petition, Alta was no longer receiving therapy and neither Respondent nor Ardith received treatment throughout the case.

¶ 12    By the end of 2019, Respondent, Alta, and Ardith were attending individual counseling sessions. This mental health treatment continued until the disposition hearing. However, DSS was unable to follow up on their engagement in therapy because Respondent refused to provide DSS access to their therapy records.

¶ 13    The adjudication hearing was held over four days between February and May 2020. On May 28, 2020, the trial court adjudicated Alta and Ardith neglected due to improper care, supervision, or discipline and living in an environment injurious to their welfare. The trial court proceeded to disposition that same day, but there was insufficient court time for the hearing. Thus, the disposition hearing was rescheduled by the trial court for June 18, 2020. Respondent was ordered to allow DSS to have at least two face-to-face visits with the children before June 17, 2020. Respondent complied with the limited order. However, Respondent continued to be resistant in allowing DSS access to the children twice a month pursuant to North Carolina Department of Health and Human Services ("NC DHHS") In-Home Policies, Protocol, and Guidance for moderate-risk cases.

¶ 14    On August 31, 2020, the trial court entered its written adjudication and disposition order, concluding Alta and Ardith were neglected juveniles because they did not receive proper care, supervision, or discipline from Respondent, and they lived in an environment injurious to their welfare. Respondent retained legal custody of the children subject to a court-ordered protection plan and her compliance with in-

home services.  On September 17, 2020, Respondent timely filed notice of appeal.

## II.    Standards of Review

During the adjudication hearing, the trial court must determine whether the conditions alleged in the petition exist.  *See In re A.B.*, 179 N.C. App. 605, 609, 635 S.E.2d 11, 14 (2006) (citing *Powers v. Powers*, 130 N.C. App. 37, 46, 502 S.E.2d 398, 403-04 (1998)).  Evidence of events after the petition is filed is irrelevant to the determination of whether the child is neglected.  *See id.* at 605, 635 S.E.2d at 14-15. The trial court resolves any conflicts in the evidence, acting as "both judge and jury." *In re Oghenekevebe*, 123 N.C. App. 434, 439, 473 S.E.2d 393, 397 (1996) (citation omitted).  Accordingly, "appellate courts are bound by the trial courts' findings of fact where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary." *In re Montgomery*, 311 N.C. 101, 110-11, 316 S.E.2d 246, 252-53 (1984) (citation omitted).

Our review of the trial court's adjudication and disposition order "entails a determination of (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact." *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000) (internal quotation marks and citations omitted).  "Clear and convincing evidence is evidence which should fully convince." *In re S.R.J.T.*, ___ N.C. App. ___, 2021-NCCOA-94, ¶ 5 (citation omitted).  "[W]hether a trial court's findings of fact support

its conclusions of law is reviewed *de novo*." *In re J.S.*, 374 N.C. 811, 814, 845 S.E.2d 66, 71 (2020) (citation omitted).

## III. Analysis

Respondent raises two arguments on appeal. Each will be addressed in turn.

### A. Finding of Fact No. 24

Respondent first contends finding of fact 24 is not supported by competent evidence because DSS failed to substantiate neglect for inappropriate discipline. Respondent argues this finding is not supported because the initial case decision summary from December 2018 indicated "Services Needed" rather than "Substantiated." Finding of fact 24 states,

> As a result of the CPS investigation . . . [DSS] *substantiated neglect* for inappropriate discipline. [DSS] had concerns regarding the mental health needs of [Alta, Ardith,] and [Respondent]. Later, this matter was transferred to [DSS's] In-Home Services Unit on or about January 17, 2019. (emphasis added).

A neglected juvenile is one "whose parent . . . does not provide proper care, supervision, or discipline; . . . or who lives in an environment injurious to the juvenile's welfare." N.C. Gen. Stat. § 7B-101(15) (2021). To support an adjudication of neglect, there must be evidence of some type of emotional, physical or mental harm, or a substantial risk of such harm, from the neglect; however, there is no requirement that the court make a specific finding where the facts support a finding of harm or substantial risk of harm. *See In re Safriet*, 112 N.C. App. 747, 753, 436 S.E.2d 898,

902 (1993). The trial court is granted "some discretion in determining whether children are at risk for a particular kind of harm given their age and the environment in which they reside." *In re C.M.*, 183 N.C. App. 207, 210, 644 S.E.2d 588, 592 (2007) (internal quotation marks and citation omitted).

¶ 20        In this case, the evidence tended to show that Alta and Ardith were at a substantial risk of harm. *See In re T.R.T.*, 225 N.C. App. 567, 571, 737 S.E.2d 823, 827 (2013). During DSS's investigation into the September 18, 2018 report, Alta told the social worker that Respondent hit her in the face, causing her nose to bleed. The social worker also testified about that same investigation, "I confirmed the allegations and [Ardith] was saying that she had got in trouble and that she had got a spanking during that time and she was hit. And [Ardith] showed me a couple of marks on her." Moreover, Respondent admitted to using physical discipline with the children, further substantiating the allegations of neglect for improper discipline, but failed to attend parenting classes or therapy that could help her address the use of improper discipline.

¶ 21        The evidence also showed the girls were at risk of continued emotional and mental harm. The results of Alta and Ardith's comprehensive clinical assessments and their documented behavioral issues demonstrated they needed mental health treatment for their health and well-being. Specifically, Alta reported feeling hopeless and having difficulty eating, while Ardith stated she was frequently anxious. The

social worker testified to Respondent's "resistance to engage herself or the children in any services" such that at the filing of the petition, Alta was no longer receiving therapy and neither Respondent nor Ardith received treatment throughout the case. Thus, the evidence tends to show Respondent denied the girls necessary treatment for their mental and emotional well-being and refused to attend therapy to address her own mental health issues that contributed to her stress and feelings of frustration regarding the children. This Court has previously upheld a finding of neglect in cases where parents specifically failed to follow through with required therapy for themselves and treatment for their children. *See In re A.J.M.,* 177 N.C. App. 745, 751, 630 S.E.2d 33, 36 (2006); *see also In re Thompson,* 64 N.C. App. 95, 100-01, 306 S.E.2d 792, 795-96 (1983).

¶ 22        Here, Respondent's failure to attend parenting classes and seek mental health treatment for herself and the children demonstrates that she did not address the conditions that led to the filing of the petition and the ultimate adjudication of neglect. *See A.J.M.,* 177 N.C. App. at 751, 630 S.E.2d at 36. "A parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect." *In re C.M.P.,* 254 N.C. App. 647, 655, 803 S.E.2d 853, 859 (2017) (citation omitted). Respondent's use of improper discipline on Alta and Ardith, and her failure to satisfy DSS's recommendations to address the root cause, resulted in concerns for Alta and Ardith's safety. *See id.* DSS case plans are designed to address the conditions that

DSS has identified as endangering the well-being of the children. *See In re Brim*, 139 N.C. App. 733, 742-43, 535 S.E.2d 367, 372 (2000).

¶ 23        This Court has upheld a trial court's finding that a mother's failure to cooperate with DSS put the child at risk of substantial harm where the mother refused to participate in services, including parenting classes and mental health therapy. *In re T.R.T.*, 225 N.C. App. at 572, 737 S.E.2d at 827. Such evidence in light of a prior adjudication of neglect supported the trial court's finding of neglect. *Id.* (citing *In re C.M.*, 183 N.C. App. at 212, 644 S.E.2d at 593). Respondent admitted to hitting Alta and to using physical discipline, including hitting Ardith with a belt and leaving bruises and marks. Thus, Respondent's use of improper discipline and refusal to complete the requirements intended to address this issue supports the trial court's finding of fact.

¶ 24        Respondent further contends finding of fact 24 was not supported by competent evidence because it also states this case was transferred to in-home services "on or about January 17, 2019," instead of on December 7, 2018.

¶ 25        While the North Carolina Child Protective Services ("CPS") Assessment Documentation Tool provided in the record on appeal reveals that DSS transferred this case to in-home services on December 7, 2018, rather than on January 17, 2019, as is stated in finding of fact 24, we do not find that this typographical error undercuts the clear and convincing evidence of the minor children's neglect in this case.

Accordingly, we affirm the trial court on this issue.

**B. Neglected Conclusion of Law**

¶ 26        Next, Respondent contends the trial court's conclusion of law that Alta and Ardith were neglected is not supported by the evidence because DSS did not *substantiate* neglect in December 2018; Respondent and the girls received some services for seven months; and there were no new reports of maltreatment between the time of the first allegation and the time of the adjudication hearing.

¶ 27        DSS has the duty to screen reports of suspected child abuse, neglect, or dependency to determine whether the facts reported, if true, meet the statutory definitions of abuse, neglect, or dependency.  N.C. Gen. Stat. § 7B-302 (2021); N.C. Gen. Stat. § 7B-403 (2021).  If they do, DSS must determine what type of assessment response is appropriate.  N.C. Gen. Stat. § 7B-302(a).  A "family assessment" response is used for reports meeting the statutory definitions of neglect and dependency and applies a family-centered approach that focuses on the strengths and needs of the family as well as the child's alleged condition.  N.C. Gen Stat. § 7B-101(11b) (2021).  At the end of an assessment, DSS determines or substantiates whether abuse, neglect, serious neglect, or dependency occurred.  If DSS substantiates a report or determines that the family needs services, DSS must provide protective services and *may* file a petition with or without requesting a nonsecure custody order removing the child from the home immediately.  N.C. Gen. Stat. § 7B-302(c)-(d); N.C. Gen. Stat.

§ 108A-14(a)(11) (2021).

After substantiation or a finding that a family requires services, DSS is responsible for determining what services would help the family to meet the child's basic needs, keep the child safe, and prevent future harm. DSS must determine and arrange for the most appropriate services, focusing on the child's safety. If a parent, guardian, custodian, or caretaker refuses to accept the protective services arranged or provided by DSS, then DSS is *required* to file a petition to protect the juvenile(s). N.C. Gen. Stat. § 7B-302(c).

In this case, Respondent improperly assumes that DSS can only proceed with filing a juvenile petition if there is a case decision of substantiation, not merely services needed. A determination of substantiated and services needed are treated similarly under DSS policy. We note the policies and protocols that guide and govern in-home services, "In-Home Services Policy, Protocol and Guidance," (IHS Policy), are found in North Carolina's Child Welfare Manual published by the North Carolina Department of Health and Human Services. CPS In-Home Services are legally mandated for a substantiation of neglect *or determination of services needed*. *See* N.C. Dep't of Health & Hum. Servs., *In-Home Services Policy, Protocol, and Guidance*, 1, 3 (May 2020), https://policies.ncdhhs.gov/divisional/social-services/child-welfare/policy-manuals/in-home_manual.pdf. Further, throughout the IHS Policy, the two terms are used in this manner, and various measures are required following

a substantiation and a determination that services are needed. *Id*. at 1, 3-4. Thus, "Services Needed" is not the same as "unsubstantiated."

¶ 30 Here, DSS made a case decision of "Services Needed" based on Respondent's use of improper discipline and the mental health needs of the family. DSS's determination was supported by Alta's descriptions of Respondent leaving marks on her legs from being whipped with a belt several times and Respondent yelling when the children did something wrong. Further, Ardith reported to the social worker that Respondent sometimes smacked the children on the back of their heads, on their legs, and on the sides of their faces with her hand. Such allegations were confirmed by Respondent who admitted she used such physical discipline with the children at the time.

¶ 31 Although Respondent was willing to engage the children and herself in mental health treatment while DSS was investigating the report, there is sufficient evidence in this case to support the girls were neglected at the time of the filing of DSS's petition. Respondent's refusal to follow the recommendations from Yelverton's comprehensive clinical assessments, refusal to complete any parenting programs, and failure to comply with in-home services is sufficient evidence to support a finding of neglect. Respondent testified she failed to seek outpatient therapy for herself and the girls before the petition was filed or the adjudication hearing. Where parents or caretakers did not cooperate with DSS or ensure their children received proper

treatment, this Court has upheld the trial court's finding of neglect. *See In re T.R.T.*, 225 N.C. App. at 571, 737 S.E.2d at 827 (upholding a trial court's finding that a mother's failure to cooperate with DSS put her child at risk of substantial harm where the mother refused to participate in parenting classes and mental health therapy); *In re C.M.*, 183 N.C. App. at 212, 644 S.E.2d at 593 (holding that the findings relating to the prior adjudication of neglect, subsequent termination of parental rights as to another child, and the parents' failure to attend mental health treatment and vocational rehabilitation supported the finding that their child was neglected); *In re Thompson*, 64 N.C. App. at 101, 306 S.E.2d at 795-96 (holding that the mother's failure to seek treatment for her daughter to determine if she was developing normally supported the conclusion of neglect by failure to provide necessary medical care); *In re Huber*, 57 N.C. App. 453, 458, 291 S.E.2d 916, 919 (1982) (affirmed the finding of neglect where the mother failed to ensure her child received the necessary medical and remedial care she needed, reasoning that "[to] deprive a child of the opportunity for normal growth and development is perhaps the greatest neglect a parent can impose upon a child"). Thus, based on the evidence and consistent with our precedent, we hold the trial court's conclusion that Alta and Ardith were neglected juveniles is supported by its findings of fact.

¶ 32        We note that "erroneous findings unnecessary to the determination [of neglect] do not constitute reversible error where an adjudication is supported by sufficient

additional findings grounded in clear and convincing evidence." *In re C.B.*, 245 N.C. App. 197, 199, 783 S.E.2d 206, 208-09 (2016) (internal quotation marks omitted) (quoting *In re T.M.*, 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006)). Here, the trial court's typographical error in using the phrase "substantiated neglect" instead of "services needed" in finding of fact 24 has no practical effect on the determination that Alta and Ardith were neglected juveniles. Our review revealed the two phrases are treated similarly under DSS policy and that DSS was required under N.C. Gen. Stat. § 7B-302(c) to file a petition after determining the family needed services and Respondent refused to accept or participate in those services. N.C. Gen. Stat. § 7B-302(c).

## IV.  Conclusion

Therefore, we hold there was sufficient and clear and convincing evidence the children were neglected at the time of the filing of the petition. Accordingly, we affirm the trial court's adjudication and disposition order.

AFFIRMED.

Chief Judge STROUD and Judge COLLINS concur.