IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-473

Filed 19 November 2025

Greene County, Nos. 15JA000016-390, 15JA000017-390, 19JA000010-390, 20JA000005-390, 23JA000008-390, 23JA000009-390

IN THE MATTER OF: L.M., S.C., J.M., T.R-M., T.M., T.M.

Appeal by Respondent-Mother from judgment entered 15 October 2024 by Judge Annette Turik in Greene County District Court. Heard in the Court of Appeals 29 October 2025.

> *Gay Parker Stanley for Petitioner-Appellee Greene County Department of Social Services.*
>
> *Peter Wood for Respondent-Appellant Mother.*
>
> *William L. Gardo, II, for guardian ad litem.*

GRIFFIN, Judge.

Respondent-Mother[1] appeals the trial court's permanency planning order, arguing the trial court abused its discretion when it denied her motion to continue at the 3 September 2024 hearing and this denial caused her prejudice. We disagree and affirm the trial court.

## I. Factual and Procedural Background

---

[1] We use the pseudonyms stipulated to by the parties to protect the identity of the children pursuant to the Rules of Appellate Procedure. N.C. R. App. P. 42(b). We also use the name Respondent-Mother to protect the identity of the children. None of the children's fathers join in this appeal. Because each child, except Trisha and Teresa, have different fathers, we distinguish Father with the child's name for clarity when needed.

Respondent-Mother has seven children. The children are Susan, Lana, Julie, Trent, Trisha, Teresa, and Rose.[2] On 8 March 2019, Greene County Department of Social Services filed a petition alleging Susan to be neglected, and, on 1 July 2019, the trial court adjudicated and found Susan to be neglected. On 1 June 2020, DSS filed a petition alleging Lana to be abused and neglected, and, on 20 January 2021, the trial court adjudicated and found Lana to be abused and neglected. On 1 June 2020, DSS filed petitions alleging Julie and Trent to be neglected, and, on 20 January 2021, the trial court adjudicated and found Julie and Trent to be neglected. On 1 June 2022, Pitt County DSS filed petitions alleging Teresa and Trisha to be neglected and dependent. The trial court adjudicated and found Teresa and Trisha neglected and dependent on 2 February 2023. Their case was transferred to Greene County on 9 February 2023. Respondent-Mother attended each of these adjudication hearings.

On 5 February 2024, the trial court issued an order for nonsecure custody for Rose, the youngest child, giving nonsecure custody to DSS because of the substantial risk Respondent-Mother and her living environment posed to Rose. On 11 March 2024 and 15 April 2024, the trial court held nonsecure custody hearings regarding Rose, and, on 20 May 2024, the trial court held adjudication and disposition hearings regarding Rose, finding Rose neglected. Respondent-Mother did not attend any of

---

[2] Rose's case is not included in this appeal. However, the previous proceedings regarding Rose leading up to and through the 3 September 2024 hearing at issue are included in the transcript and supplemental record. Thus, we review the whole record for purposes of evaluating the issue presented in this appeal.

these hearings, which Judge Turik presided over. Respondent-Mother's whereabouts were unknown to the trial court and the parties at the time. Thus, the trial court continued the hearings. Later, the trial court was informed that Respondent-Mother was incarcerated in Pitt County at the time of the adjudication and disposition hearings. Until Rose's nonsecure custody hearing, Respondent-Mother had attended each hearing for the six older children except the 15 August 2022 permanency planning hearing for Lana.

On 22 July 2024, Judge Turik held an initial permanency planning hearing for Rose as well as permanency planning review hearings for Susan, Lana, Julie, Trent, Trisha, and Teresa. Respondent-Mother did not attend the hearing, because she was in the emergency room at ECU Vidant Hospital due to illness. Based on Respondent-Mother's absence, the trial court continued the permanency planning hearing until 3 September 2024 and set aside Rose's prior adjudication. However, during the 22 July 2024 hearing, the trial court dealt with an issue regarding Respondent-Mother, Susan, and a cell phone in Susan's possession. The phone issue pertained to Susan's refusal to surrender the phone, Respondent-Mother's purported "intentional and willful violations" of the trial court's previous orders governing contact between Susan and Respondent-Mother, and Susan's purported use of the phone to record court proceedings for Respondent-Mother and subsequent lying to the trial court about her possession of the phone. On 2 August 2024, DSS filed a motion for contempt regarding Respondent-Mother and Susan based on these issues related to the phone.

The trial court scheduled and held a contempt hearing for Susan and Respondent-Mother on 12 August 2024. Respondent-Mother failed to appear. Over the course of the various proceedings, GAL and DSS provided court reports to the trial court, providing status updates on the children, issues for the trial court to address, recommendations, and case history.

On 3 September 2024, the trial court held Rose's adjudication and disposition hearings as well as permanency planning hearings for the six older children. The trial court was scheduled to hold Respondent-Mother's contempt hearing the same day. Respondent-Mother received notice fifteen days prior to the hearing as well as the purpose of the hearing, but she failed to attend. Her counsel motioned to continue:

> MR. BROADWAY [Respondent-Mother's Counsel]: I do represent [Respondent-Mother]. And we'll me [sic] making a motion to continue. My client messaged me this morning since court started to say that she's home and does not have a ride and so has asked me to ask for a continuation (inaudible) that.
>
> MS. KIRBY [Trisha and Teresa's Father's Counsel]: Your Honor, I would also join in on that continuance request. My client also contacted me when I was on the way over back from Wayne County to Greene. He has a ride that can get him at 11:30 (inaudible) be here until this afternoon sometime. So he is requesting a continuous [sic] for that.
>
>  . . .
>
> THE COURT: Okay. You wish to be heard on the motion to continue?

MS. STANLEY [DSS's Counsel]: Your Honor, we're ready to proceed. And with regards to [Respondent-Mother], she doesn't seem to be appearing in court lately. She has missed most of the court dates and she's (inaudible) last day and no transportation. I know she let us know this morning she was not coming.

MS. KIRBY: I tried texting [Respondent-Mother] all week and this is the first time I heard from her, so –

MR. BROADWAY: And I'm communicating via e-mail.

THE COURT: Yes, sir. Mr. Brown, are you ready to proceed?

MR. BROWN [GAL Attorney Advocate]: Yes, Your Honor. We're ready to proceed.

THE COURT: All right. I understand the position of counsel. [Respondent-Mother] regularly does not appear in this court. She's not compliant with the orders of the [c]ourt. [Trisha and Teresa's Father] is who you represent?

MS. KIRBY: Yes, Your Honor.

THE COURT: I believe, according to the report, they're living together. So he has also not complied with the orders of the [c]ourt and I don't know if he's been here since he got out of prison. He wasn't here on the last court date.

MS. KIRBY: He was here on the last –

THE COURT: He was here on the last court date?

MS. KIRBY: Yes, Your Honor.

THE COURT: Okay. The motion to continue by [Respondent-Mother's] counsel is respectfully denied.

The hearing proceeded. Respondent-Mother's counsel was presented with

opportunities to cross-examine witnesses and participate in the hearing on behalf of Respondent-Mother. On 15 October 2024, the trial court filed permanency planning orders for the oldest six children, which included the elimination of reunification plans. Respondent-Mother timely appealed.

## II.    Analysis

The issue is whether the trial court abused its discretion when it denied Respondent-Mother's motion to continue the permanency planning review hearing when Respondent-Mother was not present. Respondent-Mother argues "the trial court abused its discretion when it denied [her] motion . . . because the court erroneously believed [Respondent-Mother] had routinely failed to come to court when [Respondent-Mother] had actually missed only one court date in five years." We disagree and affirm the trial court.

Since Respondent-Mother "did not assert in the trial court that a continuance was necessary to protect a constitutional right" the "motion to continue is addressed to the discretion of the trial court, and absent a gross abuse of that discretion, the trial court's ruling is not subject to review." *In re A.L.S.*, 374 N.C. 515, 516–17, 843 S.E.2d 89, 91 (2020) (quoting *State v. Walls*, 342 N.C. 1, 24, 463 S.E.2d 738, 748 (1995)). "Continuances are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it. The chief consideration is whether granting or denying a continuance will further substantial justice." *In re S.M.*, 375 N.C. 673, 680, 850 S.E.2d 292, 299–300 (2020) (citation modified).

In juvenile abuse, neglect, and dependency hearings, motions to continue are governed by N.C. Gen. Stat. § 7B-803, which states,

> The court may, for good cause, continue the hearing for as long as is reasonably required to receive additional evidence, reports, or assessments that the court has requested, or other information needed in the best interests of the juvenile and to allow for a reasonable time for the parties to conduct expeditious discovery. Otherwise, continuances shall be granted only in extraordinary circumstances when necessary for the proper administration of justice or in the best interests of the juvenile. Resolution of a pending criminal charge against a respondent arising out of the same transaction or occurrence as the juvenile petition shall not be the sole extraordinary circumstance for granting a continuance.

N.C. Gen. Stat. § 7B-803 (2023). Here, the trial court would grant the continuance only in an extraordinary circumstance. Thus, Respondent-Mother must show that she had an extraordinary circumstance for the continuance and the trial court's denial of her motion to continue was "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re C.J.C.,* 374 N.C. 42, 47, 839 S.E.2d 742, 746 (2020) (quoting *In re A.R.A.*, 373 N.C. 190, 199, 835 S.E.2d 417, 423 (2019)). "[Respondent-Mother] must also show she 'suffered prejudice as a result of the error.'" *In re L.G.*, 274 N.C. App. 292, 295, 851 S.E.2d 681, 685 (2020) (quoting *In re A.L.S.,* 374 N.C. at 517, 843 S.E.2d at 91).

Extraordinary circumstances are "[a] highly unusual set of facts that are not commonly associated with a particular thing or event." *Circumstance*, Black's Law Dictionary (12th ed. 2024) (defining "extraordinary circumstance"). This Court has

addressed which circumstances constitute the extraordinary circumstances required for a motion to continue. For example, in *In re D.W.*, this Court ruled extraordinary circumstances supported a "motion to continue a hearing to terminate the parental rights of a [r]espondent[-]mother who was suffering from mental disability, to whom there is no evidence that notice was given, and from whom the trial court could hear testimony directly addressing the ultimate issue at trial." 202 N.C. App. 624, 629, 693 S.E.2d 357, 360 (2010).

Closer to the facts of this case, in *In re L.G.*, a trial court denied a motion to continue after counsel for the respondent-mother made an oral motion in court to continue. 274 N.C. App. at 296, 851 S.E.2d at 685. There, counsel "not[ed] [the respondent-mother] had consistently attended all court proceedings;" the respondent-mother intended to check into medical facilities; and she had "received copies of the report[s] . . . and has not been able to communicate back to [counsel] . . . her comments." *Id.* "In denying [the respondent-mother's] motion, the trial court observed the case had been before the [c]ourt [ ] for twenty-three months, and pointed to the amount of information contained in the court file and in the reports submitted by DHHS and the GAL." *Id.* (citation modified). On appeal, this Court affirmed the trial court, noting "[t]he purpose of a permanency planning hearing is to identify the 'best permanent plans to achieve a safe, permanent home for the juvenile' consistent with the juvenile's best interest," yet the respondent-mother's "counsel made no proffer, other than [her] absence, tending to suggest a continuance would further the

cause of identifying the appropriate permanent plan for [her child]." *Id.* at 297, 851 S.E.2d at 685–86 (quoting N.C. Gen. Stat. § 7B-906.1(g), (i) (2019)).

Respondent-Mother argues the trial court's denial of her motion was "primarily because of the unsupported assumption that [Respondent-Mother] had not appeared for court the past few court dates" and "the trial court and [P]etitioner both remembered the history of the case wrong." In support of this argument, Respondent-Mother contends "[u]ntil the [3 September] 2024 hearing, she had missed only one of thirteen court hearings," the 15 August 2022 permanency planning review hearing. However, Respondent-Mother also did not appear at Rose's 11 March 2024 and 15 April 2024 nonsecure custody hearings, Rose's 20 May 2024 adjudication and disposition hearings, the 22 July 2024 hearings for all seven children, the 12 August 2024 contempt hearing, and the 3 September 2024 hearing. Respondent-Mother cites our Supreme Court's opinion in *Shankle v. Shankle*, which said, "[i]n reaching its conclusion the court should consider all the facts in evidence, and not act on its own mental impression or facts outside the record[.]" 289 N.C. 473, 483, 223 S.E.2d 380, 386 (1976) (quoting 17 C.J.S. Continuances § 97 (1963)). But, as Respondent-Mother acknowledges, the Court continued saying "although . . . it may take into consideration facts within its judicial knowledge." *Id.* (omission in original).

Here, Judge Turik presided over these 2024 hearings at which Respondent-Mother did not appear, and she granted continuances when needed, such as when Respondent-Mother was in prison or in the hospital. Further, DSS and GAL

submitted court reports at regular intervals keeping the trial court up to date not only on the status of the children but also on the case history. Thus, the trial court's denial of the motion to continue based on Respondent-Mother regularly not appearing in court was not premised on mental impression but on judicial knowledge. *In re Isenhour*, 101 N.C. App. 550, 553, 400 S.E.2d 71, 73 (1991) ("A trial court may take judicial notice of earlier proceedings in the same cause." (citing *In re Byrd,* 72 N.C. App. 277, 279, 324 S.E.2d 273, 276 (1985))).

Moreover, like in *In re L.G.*, here, Respondent-Mother's counsel motioned to continue and only offered the reason "that she's home and does not have a ride and so has asked me to ask for a continuation." No additional support for Respondent-Mother's motion was provided; thus, it was not a highly unusual set of facts warranting a motion to continue for extraordinary circumstances. Additionally, the trial court's denial of the motion to continue for juvenile cases that have been active anywhere from three to six years for the oldest six children advanced substantial justice for the children. Thus, the trial court did not abuse its discretion in denying the motion to continue.

Furthermore, even assuming error, Respondent-Mother was not prejudiced by the trial court's denial of her motion to continue. Respondent-Mother argues "[t]here is inherent prejudice when a court conducts a hearing in the absence of a parent" and contends her constitutional right to due process was violated. "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely

request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1).

Our Supreme Court has been clear about when constitutional rights are not the basis of the motion to continue in the trial court:

> However, there is no indication in the record that [the] respondent's counsel moved to continue the termination hearing in order to protect [the] respondent's constitutional rights. There is no mention of the need to continue due to a lack of notice or in order to ensure due process. Although the transcript of the proceedings is incomplete, the transcript shows that upon inquiry from the trial court [the] respondent's counsel confirmed that his only objection to proceeding with the termination hearing was [the] respondent's absence. A parent's absence from termination proceedings does not itself amount to a violation of due process. Accordingly, [the] respondent has waived any argument that the denial of the motion to continue violated his constitutional rights[.]

*In re J.E.*, 377 N.C. 285, 290, 856 S.E.2d 818, 822 (2021) (internal citations omitted); *see In re L.G.*, 274 N.C. App. at 297, 851 S.E.2d at 686 ("Moreover, the mere fact [Respondent-Mother] was not present for the [permanency planning and review] hearing is not *per se* prejudicial."). Likewise, here, nothing in the 3 September 2024 transcript mentioned "the need to continue due to a lack of notice or in order to ensure due process;" the only support offered for the motion to continue was Respondent-Mother's absence. Respondent-Mother cites *In re D.W.* in support of her due process argument, but this Court in *In re D.W.* held there to be an abuse of discretion where

the respondent-mother "was suffering from mental disability, [ ] there [was] no evidence that notice was given, and from whom the trial court could hear testimony directly addressing the ultimate issue at trial." 202 N.C. App. at 629, 693 S.E.2d at 360. Those facts are not present here. Thus, the due process argument is waived.

Similarly, Respondent-Mother raises the possibility that her absence could be ineffective assistance of counsel; however, because her counsel only raised her absence as the reason for the motion to continue, her ineffective assistance of counsel is also waived on this appeal. *In re C.M.P.*, 254 N.C. App. 647, 652, 803 S.E.2d 853, 857 (2017) (holding the "respondent failed to preserve the issue of whether the denial of the motion violated her constitutional right to effective assistance of counsel" because the "respondent's counsel raised only one ground to support the motion to continue at the hearing: that [the] respondent was absent from the hearing"); *see In re S.M.*, 375 N.C. at 679, 850 S.E.2d at 299 ("Because [the] respondent-father did not assert before the trial court that a continuance was necessary to protect a constitutional right, that position is waived. . . ." (citing *In re A.L.S.*, 374 N.C. at 516–17, 843 S.E.2d at 91)). While a "timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make" may not necessarily be required "if the specific grounds were [ ] apparent from the context," N.C. R. App. P. 10(a)(1), Respondent-Mother's motion to continue solely premised on her absence because she did "not have a ride" as well as her argument on appeal that generally "[r]epresenting a client who is not present in court can be ineffective

assistance of counsel" does not provide the necessary context to save her argument from waiver.  *See In re C.M.P.*, 254 N.C. App. at 652, 803 S.E.2d at 857.

Therefore, because Respondent-Mother did not present an extraordinary circumstance and the denial of the motion to continue was not "manifestly unsupported by reason or [ ] so arbitrary that it could not have been the result of a reasoned decision," *In re C.J.C.,* 374 N.C. at 47, 839 S.E.2d at 746, the trial court did not abuse its discretion.

### III.    Conclusion

Accordingly, we affirm the trial court's denial of Respondent-Mother's motion to continue.

AFFIRMED.

Judges ARROWOOD and GORE concur.